**Scott DOE, et al., Plaintiffs,**

v.

**ELI LILLY & COMPANY, INC., et al., Defendants.**

**Civ. A. No. 82–3515.**

United States District Court,
District of Columbia.

Sept. 9, 1983.

Leland S. Van Koten, Wright & Parks, Towson, Md., James E. Turner, Washington, D.C., for plaintiffs.

James A. Hourihan, Washington, D.C., for defendants.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

This matter comes before the Court on the motion of defendant Eli Lilly & Company, Inc., ("Lilly") a pharmaceuticals manufacturer, to compel discovery—more precisely, to facilitate it—namely, to require plaintiffs to execute appropriate written forms addressed to their various physicians authorizing them to release to defendant's attorneys such information about them as the physicians may have acquired in a privileged capacity. For the reasons hereafter stated defendant's motion will be granted.

Plaintiffs Mary and Scott Doe, mother and child, allege that the mother's ingestion of the synthetic estrogen diethylstilbestrol ("DES") during her pregnancy in 1961 caused the conditions and deformities with which Scott was found to be afflicted following his birth in 1962. Defendant Lilly is one of several manufacturers of DES whose brand of the substance was on the market in 1961 and may have been prescribed for and consumed by Mary Doe. Lilly denies that it was negligent or its product defective, but it also refuses to concede that DES caused the injuries of which Scott Doe complains and has indicated its desire to inquire into the plaintiffs' medical histories in the course of its pretrial discovery to identify other possible etiologies for those injuries.

Plaintiffs acknowledge that their physical and mental conditions have been placed in issue by the filing of this lawsuit, and that they have (or will shortly be held to have) waived the medical privilege insofar as it would protect against disclosure of relevant evidence thereof altogether. *See* 4 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 26.60(6) at 254 (2d ed. 1983); 8 J. Wigmore, *Evidence* §§ 2388–89 (McNaughton rev. ed. 1961); C. Wright & A. Miller, *Federal Practice and Procedure* § 2016 at 130 & n. 78 (1970); Annot., 21 A.L.R.3d 912 (1968); *cf. Dani v. United States,* 173 A.2d 736 (D.C.1961). They are unwilling, however, to implement the waiver in a manner which would enable Lilly to conduct informal *ex parte* interviews of their physicians for fear that defendant will use the occasion to influence the testimony the physicians may ultimately be called upon to give at trial. Plaintiffs contend that Fed.R. Civ.P. 30 depositions upon oral examination are the appropriate method to elicit such information, *see Weaver v. Mann,* 90 F.R.D. 443 (D.N.D.1981); *Garner v. Ford Motor Co.,* 61 F.R.D. 22 (D.Alaska 1973); *cf. Wenninger v. Meusing,* 307 Minn. 405, 240 N.W.2d 333 (1976), and they assure that they will not invoke the medical privilege to obstruct the depositions of the physicians, provided, of course, they are given the required notice of and opportunity to participate in those depositions.

**128**

As a general proposition, however, no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance. *See International Business Machines Corp. v. Edelstein,* 526 F.2d 37, 41–44 (2d Cir.1975); *Gregory v. United States,* 369 F.2d 185, 187–88 (D.C.Cir.1966); *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 551 (D.C. 1981); 8 J. Wigmore, *Evidence* § 2192 (McNaughton rev.ed. 1961). Even an expert whose knowledge has been purchased cannot be silenced by the party who is paying him on that ground alone. Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows if other appropriate conditions the witness alone may impose are satisfied, e.g., compensation for his time and expertise or payment of reasonable expenses involved, and while the Federal Rules of Civil Procedure have provided certain specific formal methods of acquiring evidence from recalcitrant sources by compulsion, they have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *see International Business Machines Corp. v. Edelstein,* 526 F.2d at 43–44; *cf. Gregory v. United States,* 369 F.2d at 187–88; *Trans-World Investments v. Drobny,* 554 P.2d 1148, 1151–52 (Alaska 1976).

The potential for influencing trial testimony is inherent in every contact between a prospective witness and an interlocutor, formal or informal, and what a litigant may justifiably fear is an attempt by an adversary at *improper* influence for which there are sanctions enough if it occurs. *See Gregory v. United States,* 369 F.2d at 188. And there are entirely respectable reasons for conducting discovery by interview *vice* deposition: it is less costly and less likely to entail logistical or scheduling problems; it is conducive to spontaneity and candor in a way depositions can never be; and it is a cost-efficient means of eliminating non-essential witnesses from the list completely. Those are the reasons offered by defendant for what it would do here but cannot for the physicians' inhibitions deriving from the privilege of which plaintiffs are unwilling to relieve them except at deposition.

The medical privilege in the District of Columbia has been codified at D.C.Code, § 14–307, and provides, in pertinent part, that in both federal and local courts in the District of Columbia,

"... a physician or surgeon ... may not be permitted, without the consent of the person afflicted, or of his legal representative, to disclose any information, confidential in its nature, that he has acquired in attending a client in a professional capacity and that was necessary to enable him to act in that capacity, whether the information was obtained from the client or from his family or from the person or persons in charge of him."

D.C.Code Ann. § 14–307 (1981). The statutory purposes are similar to those given for the common law privileges—to promote greater freedom of communication between physician and patient by covering the relationship with a "cloak of confidence" and to prevent disclosure of information concerning the patient which might result in his humiliation, embarrassment, or disgrace. *Wilson v. Thornton,* 416 A.2d 228, 236 (D.C. 1980). The privilege was never intended, however, to be used as a trial tactic by which a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time. *Cf. Edmund J. Flynn Co. v. LaVay,* 431 A.2d at 551.

The inchoate threat implicit in refusing or qualifying permission to speak to a witness in possession of privileged information operates to intimidate the witness, who is then placed in the position of withholding or divulging what he knows at his peril, and is itself a species of improper influence. It also enables the party so wielding the privilege to monitor his adversary's progress in preparing his case by his presence on each occasion such information

is revealed while his own preparation is under no such scrutiny. The Court concludes that it would be an abuse of the privilege to allow it to be used in such a manner which has no relation to the purposes for which it exists.

It is, therefore, this 9th day of September, 1983,

ORDERED, that defendant Lilly's motion is granted, and plaintiffs are directed to execute appropriate forms of authorization or otherwise to inform their physicians that no inhibitions of privilege exist with respect to the disclosure of any information they possess to defendant Eli Lilly and its agents which is relevant to the subject matter of these proceedings.