**Richard P. FELDER, Jr., as Administrator of the Estate of Amy Simmons Felder, deceased, Plaintiff,**

v.

**Frank J. WYMAN, M.D., Columbia Obstetrics & Gynecology Associates, P.A., Narayan Shenoy, M.D., Anesthesiologists of Columbia, P.A., and Baptist Medical Center, Defendants.**

**Civ. A. No. 3:91–797–15.**

United States District Court, D. South Carolina, Columbia Division.

Aug. 7, 1991.

---

W. Lamar Flatt, Furr & Henshaw, P.A., Columbia, S.C., for plaintiff.

David A. Brown, Aiken, S.C., for Frank J. Wyman, M.D. and Columbia Obstetrics & Gynecology Associates, P.A.

Donald V. Richardson III, Richardson, Plowden, Grier & Howser, Columbia, S.C., for Anesthesiologists of Columbia, P.A. and Narayan Shenoy, M.D.

Harold W. Jacobs, Nexsen, Pruet, Jacobs & Pollard, Columbia, S.C., for Baptist Medical Center.

### ORDER

HAMILTON, Circuit Judge, sitting by designation.

This matter is currently before the court on plaintiff's motion for a protective order, filed June 6, 1991, pursuant to Rule 26(c), Fed.R.Civ.Proc. Plaintiff seeks an order prohibiting defendants, their counsel, or their agents from conferring informally with any of the non-party physicians involved in the treatment of the decedent without plaintiff's consent and unless done in the presence of plaintiff's counsel or by deposition under the formal discovery rules. For the reasons set forth below, the court denies the motion.

### I.

Amy Felder was admitted to Baptist Medical Center on November 27, 1989, for medical treatment. She died while a patient at that hospital on December 1, 1989. In his complaint, filed March 21, 1991, plaintiff alleges that Amy Felder's death was caused by the negligence and malpractice of the defendants or their agents.

In his motion filed June 6, 1991, plaintiff argues that the prohibition of *ex parte* communications with non-party treating physicians is necessary to protect the confidential nature of the physician/patient relationship. Though acknowledging that there is no South Carolina statute or case law recognizing that physician/patient communications are privileged, plaintiff nonetheless argues that the relationship should be protected from *ex parte* assays of defense counsel on public policy grounds. In support of his argument that the public policy of South Carolina would recognize and protect plaintiff in the manner requested, plaintiff contends that state licensing statutes, principles of medical ethics, and common law principles of trust indicate that the courts should protect the confidential relationship between the physician and patient.

Defendants vigorously oppose the motion. They note the lack of a recognized evidentiary privilege for the physician/patient relationship. Defense counsel also argue that entry of the requested order would unfairly tip the discovery scales in favor of plaintiff by allowing plaintiff's counsel to monitor the progress of defendants' case preparation without defense counsel having similar opportunity to monitor plaintiff's *ex parte* contacts with potential witnesses. Defendants further argue that the proposed order would increase the expense of conducting discovery and could allow plaintiff's counsel to invade the work product of defense counsel.

### II.

Resolution of the present motion requires consideration of the extent to which South Carolina law recognizes and protects the confidentiality of the physician/patient

relationship. Because this case is brought under the diversity jurisdiction of the court, 28 U.S.C. § 1332, the court must look to South Carolina law on that issue. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[1] Where there is no controlling South Carolina statute or judicial decision on the issue at hand, and state law is not settled, "it is the function of the federal court in this diversity suit to determine what the South Carolina Supreme Court would likely decide if presented with the identical issue." *Louthian v. State Farm Mutual Insurance Co.,* 493 F.2d 240, 242 (4th Cir.1974).[2]

A decision on the motion does not turn solely on state law issues, however. Resolution of the present motion also requires the court to consider the scope and application of the Federal Rules of Civil Procedure, particularly those portions governing discovery.

### III.

◼ Looking to South Carolina law, the court notes that the precise issue presented by plaintiff's motion has not been addressed by statute or by the state appellate-level courts. There is no physician/patient privilege in South Carolina.[3] None is directly set forth by statute. The South Carolina appellate courts have held that South Carolina adheres to the common law rule that communications between a physician and patient are not privileged. *Peagler v. Atlantic Coast Line Railroad Co.,* 232 S.C. 274, 101 S.E.2d 821, 825 (1958); *Aakjer v. Spagnoli,* 291 S.C. 165, 352 S.E.2d 503 (Ct.App.1987).

Plaintiff asserts that absence of a statutory or case law physician/patient privilege is not dispositive, however. Plaintiff points to principles of medical ethics embodied in regulations promulgated by the South Carolina Board of Medical Examiners, and the fiduciary character of the physician/patient relationship to suggest that the public policy of South Carolina would recognize and protect the confidentiality of the relationship. Plaintiff further suggests that the requested ban on informal contact with treating physicians is necessary to effectuate that public policy.

S.C.Code Ann. § 40–47–200 provides for professional discipline of medical professionals by the State Board of Medical Examiners followed by judicial review. Sanctionable misconduct under the statute includes:

> That the holder of a license has violated the principles of ethics as adopted by the State Board of Medical Examiners and published in its regulations.

S.C.Code Ann. § 40–47–200(7). The principles of medical ethics referenced in the statute are set forth at S.C.Code Regs. § 81–60. The principles enumerated include:

> A physician may not reveal the confidences entrusted to him in the course of medical attendance, or the deficiencies he may observe in the character of patients, unless he is required to do so by law or unless it becomes necessary in order to protect the welfare of the individual or of the community.

*Id.,* § 81–60(I).

By its terms, the ethic, as set forth above, describes what the treating physician may, or may not, do. It posits no restrictions with respect to defendants, their counsel, or defendants' agents. Vio-

---

1. The duty to ascertain state law on the matter of privileges is further reinforced by Rule 501, Fed.R.Evid., which states in relevant part:
   [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

2. Plaintiff submitted an unpublished decision of the Horry County Court of Common Pleas granting the type of relief requested by plaintiff in the present motion pursuant to Rule 26(c), S.C.R.Civ.Proc. *Mincey v. Proctor,* C/A No. 89–CP–26–913 (August 28, 1989). While instructive, that decision does not bind this court under the principles set forth in *Erie. See Louthian,* 493 F.2d at 241.

3. There are three recognized relation-based privileges in South Carolina: attorney/client, husband/wife, and priest/penitent. *South Carolina Highway Dept. v. Booker,* 260 S.C. 245, 195 S.E.2d 615 (1973).

lation of the ethic is not, as of this date, recognized as grounds for a lawsuit by the offended patient in this state. Violation of the ethic, as presently set forth in the regulations, is solely a matter of professional discipline. Nothing in the jurisprudence of the South Carolina appellate courts indicates that the regulation would or should be expanded beyond its present scope.

■ The court need not ultimately predict whether a public policy privilege for patient disclosures to a physician would be recognized, however. Plaintiff concedes that even if such a privilege were recognized, such privilege would be waived by filing a lawsuit, such as the present case, challenging the quality of decedent's medical treatment. Plaintiff contends, however, that the waiver is not unqualified and that a prohibition on *ex parte* conferences is necessary to prevent disclosure of confidences irrelevant to the decedent's medical treatment and condition in this particular case. Plaintiff's argument is unpersuasive.

■ Where, as here, plaintiff has attacked the quality of decedent's medical treatment and placed decedent's medical condition into contention, any privilege that might exist to prevent disclosure with respect to decedent's medical condition is waived. "Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance." *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C.1983).

Privileges are not favored under South Carolina law. Even a readily recognized privilege, such as the attorney/client privilege, is construed narrowly. *State v. Doster*, 276 S.C. 647, 284 S.E.2d 218, 219–220 (1981), *cert. denied*, 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473. As noted in *N.R.L.B. v. Harvey*, 349 F.2d 900 (4th Cir. 1965):

> [T]he privilege [attorney/client] remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete.... It is worth preserving for the sake of a general policy, but it is

nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.

*Id.* at 907, *quoting* 8 Wigmore, *Evidence* § 2292 (McNaughton rev. 1961). The narrow construction applied to a recognized privilege suggests no judicial inclination on the part of the South Carolina Supreme Court to expand the number, type, or reach of privileges recognized in this state absent legislative direction.

■ The notion of a qualified waiver is also without support in South Carolina law. In addressing the readily recognized attorney/client privilege, the court in *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146 (D.S.C.1975), rejected the notion of qualified waiver of that privilege. The court stated:

> A waiver of the privilege as to all communications ordinarily follows from the voluntary waiver even if made *with limitations* of one or more similar communications. Thus, if a client, through his attorney, voluntarily waives certain communications, but guarded with a specific written or oral assertion at the time of the waiver that it is not its intention to waive the privilege as to the remainder of all similar communications, the privilege, as to the remaining undisclosed communications, is nevertheless waived.

*Id.* at 1162 (emphasis in the original). *See also Marshall v. Marshall*, 282 S.C. 534, 320 S.E.2d 44, 46–47 (Ct.App.1984).

The benefits suggested by plaintiff in recognizing a qualified patient/physician privilege under these circumstances and granting plaintiff a right to control access to non-party treating physicians—protecting privacy, facilitating the patient/physician relationship, insulating doctors from liability—are all "indirect and speculative." *Harvey*, 349 F.2d at 904.

Plaintiff's asserted privacy interest is already sufficiently protected given the fact that plaintiff has chosen to make decedent's health a matter of public contention. First, defendants presumably have no in-

terest in discovering information irrelevant to the decedent's medical condition and treatment as put at issue by this lawsuit. Such discovery would serve no useful purpose and would waste time and money better spent on other endeavors.

Second, the non-party treating physicians in this case have no incentive to make irrelevant disclosures. The regulations of the State Board of Medical Examiners, set forth above, would discourage such disclosures. In the event a particular physician took it upon himself to divulge any and every thing he might know about a patient, regardless of relevance, his profession stands ready to administer discipline. *See Coralluzzo v. Fass*, 450 So.2d 858, 859 (Fla. 1984) (profession should address violation of ethical rules); S.C.Ann. § 40–47–200 (setting forth grounds and procedure for professional discipline). To the extent a physician is unsure of what he may or may not disclose before incurring discipline or liability, he or she may simply decline or terminate the *ex parte* interview. Defendants can, if they feel the physician is withholding relevant information, seek to compel discovery through the formal discovery procedures.

Plaintiff's concern that the physician/patient relationship will be undermined absent the proposed order is without foundation. Only a foolish patient would withhold relevant information from his or her treating physician and jeopardize his or her health on the supposition that the information might be relevant in a subsequent lawsuit against another doctor. The court also finds it anomalous that plaintiff should contend that trust and confidence between a doctor and his or her patient is enhanced when the patient insists on sending his lawyer to monitor the doctor's conversation under the implicit threat that the patient will sue the doctor or initiate disciplinary proceedings should the doctor reveal more than the patient wishes to make known about his health.

The obstructions to the investigation of the truth arising from plaintiff's proposed rule are plain. Discovery is made more difficult and costly. Each contact between defense counsel and treating physicians would require that consent be obtained from the plaintiff and meeting times be coordinated with plaintiff's counsel. As described by plaintiff in his brief, plaintiff's counsel might raise objections to certain disclosures at "informal" meetings. It might, therefore, be necessary to obtain a reporter to record the meeting so that objections could be raised with the court and further formal depositions taken if necessary. Informal *ex parte* interviews save this expense by giving defendants' and plaintiff's counsel the opportunity to see if a witness has any information of value before employing the more formal and expensive discovery process.

Looking at South Carolina law, the court notes that Rule 30(a)(2), S.C.R.Civ.Proc., does not permit formal depositions in cases where the amount in controversy is under $10,000, absent consent of the parties or court order. Under plaintiff's proposed theory, defense counsel's access to treating physicians in cases governed by Rule 30(a)(2) could be virtually cut off by plaintiff refusing to consent to formal depositions or informal interviews. The parties would then be forced to resort to the court for orders allowing formal depositions, the very expense the rule seeks to curtail. This result reinforces this court's conclusion that the South Carolina Supreme Court would not recognize the physician/patient privilege, or if recognized, would impose a complete and unqualified waiver allowing informal *ex parte* interviews.

In *Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126 (D.D.C.1983), the court addressed the extent of a waiver of an asserted physician/patient privilege arising under the statutes of the District of Columbia. Plaintiffs in that case, like plaintiff in this case, acknowledged waiver of any privilege, but sought to restrict defendant's access to treating physicians in a manner identical to that proposed by plaintiff here. Rejecting such restrictions, the court stated:

The privilege was never intended, however, to be used as a trial tactic by which a party entitled to invoke it may control

to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time.

The inchoate threat implicit in refusing or qualifying permission to speak to a witness in possession of privileged information operates to intimidate the witness, who is then placed in the position of withholding or divulging what he knows at his peril, and is itself a species of improper influence. It also enables the party so wielding the privilege to monitor his adversary's progress in preparing his case by his presence on each occasion such information is revealed while his own preparation is under no such scrutiny.

*Id.* at 128–129 (citations omitted).

This rationale is similar to the rationale employed to reject limited waiver of the attorney/client privilege in *Duplan.* In that case, the court noted the basic unfairness inherent in the concept of a limited waiver of a privilege:

When a client voluntarily waives the privilege as to some documents that the client considers not damaging and asserts the privilege as to other documents that the client considers damaging, the rule compelling production of all documents becomes applicable. The reason behind the rule is one of basic fairness. The rationale of the rule was aptly stated in 8 Wigmore, Evidence, § 2327 (McNaughton rev. 1961):

He [the client] cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or disclose, but after a certain point his election must remain final.

*Duplan,* 397 F.Supp. at 1162.

■ Plaintiff's proposed protective order would give plaintiff an unfair advantage in the discovery process by granting inordinate control over a witness's disclosures and by allowing plaintiff to monitor the work of defendants in preparing their case. Rule 26(b)(3), Fed.R.Civ.Proc., specifically protects the work product of attorneys. With respect to opinion work product, the Rule states: "[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Such opinion work product "is to be accorded great protection by the courts." *In re Martin Marietta Corporation,* 856 F.2d 619 (4th Cir.1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169. Interviews with potential witnesses have always been considered part of the work product of the attorney, as noted in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947). Allowing plaintiff's counsel to monitor such interviews directly contradicts the Rule as set forth above.

The preparation and trial of a lawsuit is a rational search for the truth. Plaintiff's proposed order allowing him to monitor defendants' case preparation and control access to witnesses obstructs that search:

[T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production [of work product] through a subpoena or court order.

*Hickman,* 329 U.S. at 512, 67 S.Ct. at 394. Plaintiff has not met this burden. Plaintiff has placed decedent's health at issue. Defendants are entitled, as a matter of justice, to fully explore decedent's health without plaintiff unnecessarily intruding into the process and exerting undue pressure upon witnesses to censor their speech. The Federal Rules of Civil Procedure do not support plaintiff's desired result. Because the South Carolina Rules of Civil Procedure are based on the federal rules and contain the same admonitions, this court's conclusion that the South Carolina Supreme Court would not approve plaintiff's proposed privilege is further reinforced. *See Gardner v. Newsome Chevrolet–Buick, Inc.,* — S.C. ——, 404 S.E.2d 200, 201 (1991).

Aside from predicting what the South Carolina Supreme Court would hold with

respect to the existence and waiver of a physician/patient privilege, the court notes that there is nothing explicit or implicit in the *Federal* Rules of Civil Procedure which compels the result desired by plaintiff.[4] Rule 26(a), Fed.R.Civ.Proc., states that "[p]arties *may* obtain discovery" by one of the methods set forth in the rules. The Rules themselves do not limit discovery to the methods set forth in the Rules. *Doe*, 99 F.R.D. at 128. The seminal case on discovery under the Federal Rules of Civil Procedure, *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), involved access to memoranda or notes of attorneys generated in *ex parte* interviews with witnesses. Private interviews by attorneys have been recognized as a "time-honored" method for conducting discovery. *International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 42 (2nd Cir.1975). Cases implying that the methods of evidence gathering in the Rules are the sole means of conducting discovery find no support in the text of the Rules. *See, e.g., Garner v. Ford Motor Co.*, 61 F.R.D. 22 (D.Alaska 1973).

Based on the reasoning and the cited authorities above, the court concludes that plaintiff's motion should be denied. The South Carolina Supreme Court would not, in this court's opinion, fashion the type of public policy physician/patient privilege plaintiff requests. Even if such a policy were recognized, plaintiff has waived the protection of the privilege by filing a lawsuit putting at issue the quality of decedent's medical care. There is no basis for asserting a limited waiver. A limited waiver is not permitted in other duly recognized privileges, and such a limited waiver would give plaintiff improper influence over physician witnesses and improper access to defendants' preparation of their case.[5] Finally, the Federal Rules of Civil Procedure govern the discovery conducted in this case. Nothing in those Rules prohibits informal interviews of the type which plaintiff seeks to prohibit. The court is, therefore, constrained to deny plaintiff's motion for a protective order. Rule 26(c), Fed. R.Civ.Proc.

IT IS SO ORDERED at Columbia, South Carolina, this 7th day of August, 1991.

---

**4.** The state circuit court in *Mincey*, p. 8, implies that discovery in cases before the state courts may only be obtained by the methods specifically set forth in the South Carolina Rules of Civil Procedure.

**5.** In their brief, defendants Shenoy and Anesthesiologists of Columbia, P.A., argue alternatively that three of the doctors involved in the case have no professional relationship with the decedent and would not be covered by any physician/patient privilege even if one were found to exist. John E. Mahaffey, M.D., an anesthesiologist at MUSC, William B. Armstrong, M.D., a pathologist at Richland Memorial Hospital, and

Demi B. Jones, Pharm.D., a pharmacologist with the State Law Enforcement Division [SLED], were asked to examine the decedent by the Coroner investigating decedent's death. These physicians were not retained by plaintiff or the decedent. The Coroner has authorized these doctors to speak to counsel for the defendants and the plaintiff if the doctors so desire.

The court need not resolve the issue of who is or is not a treating physician for purposes of applying a physician/patient privilege given the court's disposition of the matter. Nonetheless, the court finds defendants' argument as to these three doctors persuasive.