Benjamin **LOVATO**, Plaintiff,

v.

**BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, a Delaware corporation, Defendant.**

No. CIV. A. 00–M–2584.

United States District Court,
D. Colorado.

May 7, 2001.

Paul S. Bovarnick, of counsel, Rose, Sender & Bovarnick, L.L.C., Portland, OR, Jay S. Jester, Sue Y. Kim, Miller Jester & Kearney, Denver, CO, for plaintiff.

Frederick Thomas Martinez, Hall & Evans, Denver, CO, for defendant.

## ORDER REGARDING DEFENDANT'S MOTION TO COMPEL MEDICAL RELEASES

SHAFFER, United States Magistrate Judge.

This matter comes before the court on Defendant Burlington Northern Santa Fe Railway Company's Motion to Compel Medical Releases (filed April 13, 2001). Burlington Northern requests an order requiring plaintiff to execute medical releases permitting defendant to obtain relevant medical records and informally interview plaintiff's treating physicians. Plaintiff Lovato responded in opposition to Burlington Northern's motion, arguing that informal interviews with his treating physicians would compromise the integrity and confidentiality of his medical records and permit discovery not contemplated by the Federal Rules of Civil Procedure. Plaintiff also has filed (on April 27, 2001) a Motion for Protective Order suggesting conditions that should be imposed in the event informal communications with treating physicians are permitted. The court has reviewed the briefs submitted by the parties and considered the arguments presented by counsel during a hearing on April 23, 2001.

### I.

In his complaint, plaintiff asserts a single claim under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.*, alleging that he was injured as a result of repetitive motions while performing various duties in the course of his employment with defendant. Lovato contends that Burlington Northern was negligent, *inter alia*, by failing to provide plaintiff with safe tools and equipment and by failing to warn plaintiff of the hazards to which he was exposed. The complaint further alleges that as a result of defendant's negligence, plaintiff has lost wages, incurred medical expenses, suffered "permanent physical injuries to his neck and elbows which has required surgery," and "suffered pain and emotional distress and will do so in the future, all to his general damage." (Complaint ¶ 7).

Burlington Northern seeks an order requiring plaintiff to provide medical releases for all "relevant medical records relating to his physical condition." (Motion to Compel ¶ 2). Defendant also wishes to conduct informal interviews with plaintiff's treating physicians. Plaintiff's counsel indicated that he would provide the requested releases only if the following language was included:

> This authorization is signed with the express understanding that such authorization will in no way authorize defendant or it's counsel to talk directly with any of the health care providers, nor does it authorize defendant, it's attorneys, agents or representatives to request response to any other written oral requests for opinions, clarification or any other information.

When defense counsel refused to accept this restrictive language, plaintiff's counsel agreed to permit informal interviews conditioned on defendant's agreement not to depose any physician that was informally interviewed. Not surprisingly, Burlington Northern has rejected this compromise.

### II.

The scope of discovery under the Federal Rules of Civil Procedure is well-established. Rule 26(b)(1) of the Federal Rules of Civil Procedures permits discovery of any non-privileged matter which is relevant to the claim or defense of a party, or "for good cause shown ... any matter relevant to the subject matter involved in the action." Under Fed.R.Civ.P. 26(a)(1)(B), a party is required to provide a copy of, or a description by category and location, all documents or data compilations in his possession, custody or control that are relevant to disputed facts alleged with particularity in the complaint. A plaintiff also is required to make available

for inspection and copying the documents "or other evidentiary material, not privileged or protected from disclosure," upon which his damage computation is based, including "materials bearing on the nature and extent of injuries suffered." Fed.R.Civ.P. 26(a)(1)(C).

▮ Plaintiff's sole claim for relief arises under a federal statute and, therefore, the issue of physician-patient privilege is governed by federal common law. Fed.R.Evid. 501. The Supreme Court has not recognized the existence of a physician-patient privilege. *Whalen v. Roe,* 429 U.S. 589, 602, n. 28, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (noting that the "physician-patient privilege is unknown to the common law"). Although plaintiff has directed the court's attention to 42 U.S.C. § 1320d–2(d)(2), which requires the United States Department of Health and Human Services to adopt rules "to ensure the integrity and confidentiality of [health] information," that statute cannot be construed to codify a federal physician-patient privilege.[1] *See United States v. Nixon,* 418 U.S. 683, 709–10, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (holding that evidentiary privileges should not be "lightly created nor expansively construed, for they are in derogation of the search for truth"). In the absence of any valid federal privilege, defendant's right to conduct discovery relating to plaintiff's medical condition is constrained only by the requirement of relevance. Indeed, plaintiff concedes that his medical records are relevant to his claim of permanent physical injury and must be disclosed under Fed.R.Civ.P. 26(a)(1). Information relating to plaintiff's alleged injuries obtained directly from his treating physicians presumably would be equally relevant. *Cf. Hancock v. Dodson,* 958 F.2d 1367, 1372–73 (6th Cir.1992) (holding that the district court properly admitted testimony based upon the defense's *ex parte* contacts with plaintiff's treating physician).

▮ Plaintiff objects to that portion of defendant's motion that would permit informal interviews with his treating physicians, on the grounds that *ex parte* interviews raise potential conflicts with federal law, are not contemplated by the Federal Rules of Civil Procedure, and will make discovery lengthier, more expensive and potentially more contentious. Plaintiff argues that defendant's contacts with treating physicians should be confined to formal depositions where plaintiff's counsel may be present to prevent disclosure of irrelevant and privileged information. Plaintiff requests an order that would preclude *ex parte* interviews with his physicians. In the alternative, plaintiff would accept informal interviews provided that the interviews are strictly limited to medical conditions at issue in this case; that defendant be precluded from subsequently deposing any health care provider that was interviewed; that plaintiff be permitted to send explanatory letters to any physician that defendant proposes to interview; and that plaintiff's counsel be allowed to attend any interview.

Defendant contends that it has an "absolute right" to conduct such interviews based upon the Colorado Supreme Court's decision in *Samms v. District Court,* 908 P.2d 520 (Colo.1995). (Motion to Compel ¶ 5). In that case, the state court held that by initiating a civil action which seeks damages based upon a physical or mental condition, a plaintiff implicitly waives the physician-patient privilege established by state statute. The Colorado Supreme Court further held that this waiver of privilege would also permit defense counsel to conduct informal interviews with plaintiff's treating physician in the absence of plaintiff's counsel. This is a nondiversity case and therefore the *Samms* decision is not controlling. *See Holmberg v. Armbrecht,* 327 U.S. 392, 394–95, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Federal law and the Federal Rules of Civil Procedure will govern the pending motion and the methods of discovery permitted in this case.

Defense counsel also contends that any restriction on his right to interview plaintiff's treating physicians will give Lovato an unfair advantage, since "plaintiff's counsel remains free to contact, interview or request medical/legal opinions from the treating physi-

---

1. The final rules adopting standards for privacy of individually identifiable health information became effective on April 14, 2001. Health care providers covered by these rules must comply with applicable requirements no later than April 14, 2003. *See* 66 Fed.Reg. 12434 (2001).

cians at any time without the knowledge or consent of Defendant."[2] (Motion to Compel ¶ 7). Implicit in this argument is the unfounded assumption that a treating physician would be less inclined to answer questions candidly and truthfully in a deposition setting. *Cf. Felder v. Wyman*, 139 F.R.D. 85, 89 (D.S.C.1991). While the court does not accept this premise, I can appreciate the benefits to be derived from informal discovery. As one court has observed,

> ... there are entirely respectable reasons for conducting discovery by interview *vice* deposition: it is less costly and less likely to entail logistical or scheduling problems; it is conducive to spontaneity and candor in a way depositions can never be; and it is a cost-efficient means of eliminating non-essential witnesses from the list completely.

*Doe v. Eli Lilly & Company*, 99 F.R.D. 126, 128 (D.D.C.1983).

The rules of discovery, like all the Federal Rules of Civil Procedure, must be applied in a manner that promotes the efficient exchange of relevant information, as well as the just, speedy and inexpensive determination of every action. Fed.R.Civ.P. 1. The informal communications contemplated by defendant's motion to compel are consistent with that overarching objective. The Advisory Committee Notes to the 1993 Amendments to Fed.R.Civ.P. 26 specifically contemplate "interviews of potential witnesses and other informal discovery." Indeed, informal interviews may often be the most efficient and effective discovery method. *See Wharton v. Calderon*, 127 F.3d 1201, 1204 (9th Cir.1997) (acknowledging that witness interviews are a "time-honored and decision-honored principle" and "one of the primary investigative techniques" available to counsel) (citation omitted); *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir.1977) (recognizing that infor-

mality in the discovery of information is desired). It is illogical to suggest this court can best protect against lengthier, more expensive and potentially more contentious proceedings by limiting counsel to formal discovery procedures which are inevitably harder to schedule and more time-consuming and costly both for the parties and deponent.

While acknowledging division among the courts that have addressed the issue of informal interviews with treating physicians, this court finds more persuasive those cases that have permitted *ex parte* communications. *See, e.g., MacDonald v. United States*, 767 F.Supp. 1295, 1298–1300 (M.D.Pa.1991) (finding that the United States did not violate state public policy by conducting *ex parte* interviews with plaintiff's treating physician); *Filz v. Mayo Foundation*, 136 F.R.D. 165, 169–74 (D.Minn.1991) (recognizing informal interviews with health care providers as a valuable component of federal discovery law); *Doe*, 99 F.R.D. at 128 (permitting *ex parte* interviews of plaintiff's physicians).[3] To the extent the decision in *Neal v. Boulder*, 142 F.R.D. 325, 328 (D.Colo.1992) takes a contrary view, this court declines to follow that precedent. The decision in *Neal*, which predates the Colorado Supreme Court's opinion in *Samms*, was predicated on a doctor-patient privilege recognized under Colorado law. As noted previously, state law is not controlling in this non-diversity case. Moreover, the *Neal* opinion reasoned that "authorizations for *ex parte* communications is beyond what is authorized by [Fed.R.Civ.P.] 34." *Id.* at 328. That analysis too narrowly construes the discovery procedures available under federal law. Defendant's right to conduct informal interviews will not preclude later depositions of the same physicians under Fed.R.Civ.P. 30. *See* Fed.R.Civ.P. 26(d) (recognizing that methods of discovery may be used in any sequence).

**2.** The court will presume that defense counsel would not willingly surrender his unfettered right to interview or meet informally with his client's own employees, and would object vociferously if plaintiff's counsel were to approach those employees on an *ex parte* basis. *See* Rule 4.2, Colorado Rules of Professional Conduct (prohibiting a lawyer for one party from communicating with persons having managerial responsibility on behalf of an opposing organization or with any other employee whose act or omission

in connection with the subject matter may be imputed to that organization). The court will leave for another day the scope of Rule 4.2's prohibition. *See Chancellor v. Boeing Company*, 678 F.Supp. 250 (D.Kan.1988).

**3.** *Contra Alston v. Greater Southeast Community Hospital*, 107 F.R.D. 35 (D.D.C.1985) and *Weaver v. Mann*, 90 F.R.D. 443 (D.N.D.1981).

Any informal interviews with treating physicians must comport with Fed.R.Civ.P. 26(b)(1) which limits discovery to any matter, not privileged, that is relevant to the claim or defense of a party asserted in the pleadings. *Cf. LeFave v. Symbios, Inc.*, 2000 WL 1644154 *2 (D.Colo., April 14, 2000) (the discoverability of plaintiff's medical records is governed by relevancy standards set forth in Fed.R.Civ.P. 26 and considerations of confidentiality). That may become a matter of some dispute between the parties. Although Lovato's complaint alleges both physical injury and "emotional distress" caused by defendant's negligence (Complaint ¶ 7), plaintiff has filed a Motion for Protective Order which seeks to limit informal interviews to those physicians "who have treated plaintiff for upper extremity and neck conditions." (Motion for Protective Order p. 3 ¶ 2). Contrary to the very general description of damages set forth in the complaint, the "statement of claims" submitted by plaintiff in the Scheduling Order filed by the parties merely refers to "cumulative trauma injuries to his neck and arms."[4] (Scheduling Order ¶ 2). The "computation of damages" which plaintiff provided in the Scheduling Order refers only to income which plaintiff allegedly lost as a result of his injuries. (Scheduling Order ¶ 4). If plaintiff no longer intends to place his mental condition at issue, and will not be seeking damages for emotional distress, defendant's medical releases which include all "psychological or psychiatric" records may seek information which is now irrelevant. If plaintiff intends to pursue all of the claims set forth in his complaint, the scope of relevant medical information necessarily expands beyond "upper extremity and neck conditions." *See Fox v. The Gates Corporation,* 179 F.R.D. 303, 305 (D.Colo.1998)(holding that requested medical information was not privileged but was relevant to plaintiff's claim for emotional distress damages). Based upon the allegations set forth in the complaint, the court will deny plaintiff's Motion for Protective Order, but grant leave to renew that motion should plaintiff elect to limit the scope of his damages.

Although defense counsel is not precluded from requesting *ex parte* communications with plaintiff's treating physicians, any subsequent interview must be entirely voluntary. While the court will permit informal communications between defense counsel and plaintiff's physicians, any health care provider retains the right to decline or terminate an interview, particularly if that health care provider has any question as to the scope of permissible disclosures. *Cf. Felder,* 139 F.R.D. at 89. In that instance, defendant may obtain relevant information through formal discovery procedures. The court will also require the defense to reasonably compensate a physician for his or her time and for any reasonable expenses incurred by the interviewee. *See Doe,* 99 F.R.D. at 128.

The court also will not require that informal interviews be conducted in the presence of plaintiff or his counsel. That requirement would defeat the very purpose behind informal discovery. Any informal conference with a physician will reflect the conclusions, opinions, mental impressions or legal theories of the interviewing attorney. Counsel presumably accepts this minimal invasion of his trial preparation process in exchange for the candor and spontaneity afforded by an informal interview. The presence of opposing counsel would inevitably compromise defense counsel's work product, and also potentially inhibit the interviewee. *Felder,* 139 F.R.D. at 89. Defense counsel, as an officer of the court, is required to work toward the advancement of justice, while faithfully protecting the legitimate interests of his client. Therefore, I will presume that defense counsel will confine his interviews to relevant matters and not attempt to expand an interview beyond those parameters. Counsel is entitled to proceed without unnecessary intrusions by plaintiff or his counsel. *Hickman v. Taylor,* 329 U.S. 495, 510–12, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *See also McNeil–PPC, Inc. v. Procter & Gamble Company,* 138 F.R.D. 136, 138 (D.Colo.1991) (acknowledging the protection afforded by the work-product privilege).

---

4. The court notes that in his Motion for Protective Order, plaintiff's counsel suggests that "my client ... has sued the Burlington and Northern Santa Fe Railway for injuries to his neck and arms." It would appear that plaintiff has abandoned any claim for emotional distress.

The court will permit plaintiff's counsel to advise his client's doctors of defendant's request for informal interviews. The court has no doubt that plaintiff's counsel will adhere to his obligation under Rule 3.4 of the Colorado Rules of Professional Conduct, which prohibits an attorney from unlawfully obstructing another party's access to evidence or from requesting a nonparty to refrain from voluntarily giving relevant information to another party. Plaintiff's counsel is, of course, free to de-brief a physician on the subjects addressed during an interview.

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Compel Medical Releases (filed April 13, 2001) is GRANTED and, consistent with this Order, defendants will be permitted to communicate *ex parte* with plaintiff's treating physicians; and

2. Plaintiff's Motion for Protective Order (filed April 27, 2001) is GRANTED IN PART AND DENIED IN PART as follows:

(a) absent an affirmative election by plaintiff to limit the scope of his claims, defendant may interview any physician who has treated plaintiff for physical injuries or "emotional distress" caused by defendant's alleged negligence;

(b) defendant may, but is not required to permit plaintiff or any representative of the plaintiff to attend in person or by telephone any informal interview with plaintiff's treating physicians;

(c) plaintiff's attorney may communicate in writing or orally with any physician to advise that physician of defendant's request for an informal interview and the physician's right to accept or decline that request.