Charlie ALSTON, et ux., Plaintiffs,

v.

GREATER SOUTHEAST COMMUNITY HOSPITAL, and Robert F. Blythe, M.D., Defendants.

Civ. A. No. 85–0226.

United States District Court, District of Columbia.

July 19, 1985.

---

Harlow R. Case, Washington, D.C., for plaintiffs.

Richard W. Bryan, Washington, D.C., for defendant Greater Southeast Community Hosp.[*]

## MEMORANDUM OPINION AND ORDER

ARTHUR L. BURNETT, Sr., United States Magistrate.

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, defendant Greater Southeast Community Hospital, on June 28, 1985, filed a motion for a Court order compelling plaintiff Charlie Alston to provide executed Medical Authorizations confirming that plaintiff has fully waived the physician-patient privilege by the bringing of this lawsuit for personal injuries and damages based on alleged negligence and medical malpractice of the defendants,[1] which will authorize all physicians who have examined, treated, or consulted with plaintiff not only to furnish copies of all written records they may have concerning the plaintiff, but to make themselves available for oral interview by counsel for the defendants without counsel for the plaintiffs being present. In support of the motion, defendant Greater Southeast Community Hospital has argued that once there is a waiver, it is full, complete and absolute,[2] that neither party has a proprietary right with reference to witnesses, including treating physicians of a patient-plaintiff, and that allowing *ex parte* oral communication will reduce the expense of pretrial discovery which would inevitably be incurred if every doctor who has treated the plaintiff, or had any conversation with the plaintiff, must be formally deposed to obtain any information beyond what is in the medical history and treatment records maintained by the doctors or other health care providers. In support of this position the defendant has cited and relied upon *Doe v. Eli Lilly & Company*, 99 F.R.D. 126, 127 (D.D.C.1983) (Jackson, J.), *Sklagen v. Greater Southeast Community Hospital*, C.A. No. 83–2967, Memorandum Opinion at 3 (D.D.C. March 20, 1984) (Corcoran,

---

[*] Counsel, Denver H. Graham, Esq., for the defendant Robert F. Blythe, filed a pleading joining in the motion to compel discovery of plaintiff Charlie Alston and waived his appearance at the argument on the motion.

1. Defendant Greater Southeast Community Hospital has urged that plaintiff Charlie Alston has waived the physician-patient privilege by (a) filing the instant suit, (b) testifying in depth at deposition regarding all of his physicians (and conversations therewith) and hospitalizations, (c) producing volumes of medical records, and

(d) waiving expressly the privilege as to written materials.

2. However, it is possible to frame the issue differently, i.e., by bringing an action for negligence resulting in personal injuries, a plaintiff waives the physician-patient privilege, but only to the extent that attending physicians may be required to testify on pretrial deposition with respect to the injuries sued upon. See *Garner v. Ford Motor Company*, 61 F.R.D. 22, 23 (Alaska 1973); *Mathis v. Hilderbrand*, 416 P.2d 8 (Alaska 1966).

J.),[3] and *In re Agent Orange Product Liability Litigation,* 91 F.R.D. 616 (E.D.N.Y. 1981). Senior Judge Oliver Gasch in *Stephen G. Farenga v. Georgetown University,* C.A. No. 84–1885, Memorandum-Order of June 3, 1985, reached a similar result, relying on *Doe* and *Sklagen, supra,* and also citing *Teitel v. Reynolds,* C.A. No. 81–2687 (D.D.C. August 4, 1982) (Smith, J.) and *MacMillican v. Reynolds,* No. 5484 (D.C.Sup.Ct. August 6, 1984) (Wagner, J.), emphasizing that these cases expressly authorized informal discovery of the respective plaintiffs' treating physicians.

Notwithstanding these formidable arguments and authorities, counsel for the plaintiff has filed an opposition which presents substantial arguments for disallowing a defendant's counsel from engaging in *ex parte* oral communications and informal conversations and interviews with plaintiff's treating physicians. Counsel has argued that the specific issue has not been decided by the appellate courts of the District of Columbia and that the latest pronouncement from the District of Columbia Court of Appeals, while distinguishable, *Vassiliades v. Garfinckel's, Brooks Bros.,* 492 A.2d 580, 591 (1985), indicates that there is a confidential and fiduciary relationship which exists between a doctor and patient, which must be respected. Counsel for plaintiff has urged that private conversations could lead to a breach of this confidentiality by a defendant's lawyer going beyond what is relevant under Rule 26 standards and beyond what is waived by the patient in bringing a lawsuit as a plaintiff. In support of this position, plaintiff has cited *Wenninger v. Muesing,* 307 Minn. 405, 240 N.W.2d 333 (1976), as setting forth cogently the rationale for precluding informal interviews—

"both the patient and his physician are protected from the danger that adverse counsel may abuse his opportunity to interrogate the physician by privately inquiring into facts or opinions about the patient's mental and physical health or history which may neither be relevant to the patient's lawsuit nor lead to discovery of admissible evidence. In a formal deposition ... the presence of a patient's counsel and the availability of protective orders ... assure that clearly irrelevant medical testimony will not be elicited." 240 N.W.2d at 336–37.

Furthermore, when counsel for the plaintiff is present at a formal deposition, the physician can rely upon that counsel to keep the questioning and his answers relevant to the matters properly at issue in the lawsuit.[4] It must be remembered that doctors are not normally trained in the law. Counsel for the plaintiff has also cited *Weaver v. Mann,* 90 F.R.D. 443 (D.N.D. 1981), where the court concluded that "the practice of engaging in private conversations with plaintiff's physicians is not contemplated by the rules." 90 F.R.D. at 445.[5]

---

**3.** Judge Corcoran in *Sklagen* suggested that such an authorization enables a defendant to informally interview physicians as it might any other potential witness, to ascertain if they possess any information relevant to the issues in dispute. Presumably, if they possess no information, that would end the matter and a costly and fruitless deposition would be avoided. But query whether this justification is adequate to warrant the *ex parte* and in depth interview of a physician who may be the plaintiff's primary treating physician? Further, it appears that whether a physician has any meaningful information could also be ascertained preliminarily by a few questions using the procedure of deposition upon written questions pursuant to Rule 31, Federal Rules of Civil Procedure, as an interim step which would be less expensive than the oral deposition, and, of course, the Court could shorten the time for response.

**4.** The court in *Wenninger v. Muesing* also observed that the presence of the patient's counsel at the doctor's interrogation permits the patient to know what his doctor's testimony will be, allays a patient's fears that his doctor may be disclosing personal confidences which are irrelevant to the issues in the case, and thus helps preserve the "complete trust between doctor and patient which is essential to the successful treatment of the patient's condition." 240 N.W.2d at 337.

**5.** This court was also of the view that such a practice of *ex parte* interviews, telephone calls, and letter contacts could lead to discouraging such physicians from testifying in a case.

See also *Garner v. Ford Motor Company*, 61 F.R.D. 22 (D.Alaska 1983), where the court held that under the Federal Rules of Civil Procedure, discovery of information from a plaintiff's attending physician must be in accord with the discovery rules and not "by means of private conversations between a defendant's attorneys and a plaintiff's attending physician." 61 F.R.D. at 24. Counsel for the plaintiffs has also relied upon *Miles v. Farrell*, 549 F.Supp. 82 (N.D.Ill.1982), where the court observed that as a general rule, a treating physician may not discuss his patient's medical condition with opposing counsel except pursuant to discovery authorized under the applicable rules of civil procedure, noting that such informal contacts can lead to unseemly situations in which a patient's treating physician, or other doctors associated with him, is placed in an adversary position as an expert witness against the plaintiff. Such a situation not only results in a clear conflict of interest, but could compromise the course of treatment being provided to the plaintiff as a patient, when the treating physician becomes an expert witness for a defendant hospital or a defendant doctor.

At oral argument on July 16, 1985, counsel for the plaintiff presented an additional factor to be considered. Treating or consulting physicians who have dealt with a patient after his alleged injury or trauma may be potential third-party defendants for indemnity or contribution if that doctor's treatment has exacerbated the patient's condition or may have been an intervening or superseding cause for his present complaints. Further, the *ex parte* interviews could put a lawyer in the potential role of being a witness as to a damaging admission by a doctor or as an impeachment witness, should a doctor give testimony different significantly from what he told the lawyer in the informal interview.

Even those courts which have allowed informal interviews and conversations have recognized that a doctor cannot be required to submit to the interview. For example, in *Farenga v. Georgetown University, supra*, Judge Gasch observed:

"Of course, it is within the discretion of plaintiff's treating physicians to decide whether to disclose to defendant's counsel in *ex parte* interviews medical information about the plaintiff that is relevant to the subject matter of this action." [6]

If this is so, it would seem to be a futile act to require the patient to sign an authorization allowing oral interviews, especially if counsel for the plaintiff can contact the physicians and advise them that notwithstanding the medical authorizations signed by the plaintiff, the doctor has the discretion to decline to be interviewed or to give any oral information except by formal deposition. It is doubted that the Court can "gag" counsel from correctly stating the law to the patient-plaintiff's treating and consulting physicians. Since compelling the plaintiff to provide medical authorizations allowing *ex parte* oral interviews can thus come to naught, and in reality amount to a vain act, and because of the cogent reasons advanced for formal depositions of physicians who have treated a plaintiff or have been consulted in the course of treatment, it is the considered view of this Magistrate that the motion to compel should be denied.[7]

---

6. In *Sklagen, supra*, Judge Corcoran, in emphasizing that the plaintiff had waived the physician-patient privilege, continued: "Therefore, the physicians who have treated the plaintiff should be informed that they may *in their discretion* disclose to the defendant any medical information about the plaintiff that they may possess. By compelling plaintiff to execute the medical authorization drafted by the defendant, the fact of plaintiff's waiver may be conveyed to these physicians.... The medical authorization does not require or order the physicians to disclose to the defendant medical information about the plaintiff; it merely authorizes or permits such disclosure." (Emphasis added.)

7. Indeed, the thrust of Rule 35 of the Federal Rules of Civil Procedure is incongruous with a philosophy that having brought suit a patient-plaintiff has waived the patient-physician privilege to the extent of allowing *ex parte* interviews by adverse counsel with the patient's treating physicians. Under Rule 35 defendants are entitled to have an independent medical examination of a plaintiff with respect to claimed injuries and only if plaintiff elects to ask for a copy

For the foregoing reasons, it is now hereby this 19th day of July, 1985, ORDERED that the defendant Greater Southeast Community Hospital's motion to compel discovery of plaintiff Charlie Alston be and is hereby DENIED.[8]

of the defendants' doctor's report, are the defendants, under Rule 35(b) entitled to receive copies of all reports of any prior or subsequent medical examination of the plaintiff by his own physicians concerning the same condition. If the plaintiff does not request a copy of the defendant's doctor's report, the defendants, under Rule 35, would not be entitled to receive copies of all reports of all of plaintiff's doctors, although Rule 35(b)(3) expressly provides that Rule 35 does not preclude discovery of a report of an examining physician or the taking of a deposition of the physician in accordance with the provisions of any other rule, with certain exceptions set forth in Rule 26(b)(4)(B) with respect to consulting experts.

**8.** This does not mean that a patient and his counsel cannot freely consent to an oral interview of plaintiff's treating physician if they conclude it is in the best interest of the patient as a plaintiff in a case. If such an interview would serve to dispose of a plaintiff's claim prior to a trial on the merits, counsel for the plaintiff certainly should remain free to pursue this option.