### STATE ex rel. FORD MOTOR COMPANY, Relator,

v.

### The Honorable Edith L. MESSINA, Circuit Court of Jackson County, Respondent.

No. SC 83933.

Supreme Court of Missouri, En Banc.

April 9, 2002.

---

Robert T. Adams, Paul A. Williams, Douglas W. Robinson, John F. Murphy, Kansas City, Andrew Ashworth, Vaughn Crawford, Tucson, AZ, for Relator.

Randy W. James, Aaron N. Woods, Lisa C. Beckley, Lee's Summit, Douglas R. Horn, Independence, Randall E. Hendricks, William D. Beil, Jason M. Hans, Kansas City, for Respondent.

Jordan B. Cherrick, Jeffrey R. Fink, St. Louis, Hugh F. Young, Jr., Reston Virginia, Evan A. Douthit, R. Douglas Gentile, Randall L. Rhodes, Kansas City, Steve Garner, The Strong Law Firm, Robert Palmer, Springfield, for Amicus Curiae.

DUANE BENTON, Judge.

In the circuit court, plaintiffs have sought depositions of five executives of Ford Motor Company. The respondent judge denied Ford's motion for a protective order, or to stay and quash the depositions. Ford seeks extraordinary relief. This Court issued a preliminary writ of prohibition, now made absolute, as modified. *Mo. Const. art. V, sec. 4.*

### I.

Between 1979 and 1984, Ford developed the "Bronco II" vehicle and equipped it with tires from Continental General Tire Company. In 1997, plaintiffs were injured, allegedly when their 1987 Bronco II went out of control due to a sudden tire-tread separation. Plaintiffs sued Ford for defective design and manufacture of the 1987 Bronco II, failure to warn and instruct of dangers, and sale of the defective Bronco II and Continental tires. Plaintiffs seek punitive damages.

During discovery, Ford produced depositions and other discovery from prior Bronco II cases. Plaintiffs then noticed depositions of four top Ford employees: Jacques Nasser, President and Chief Executive Officer; Thomas D. Baughman, Executive Director, Truck, North American Truck Consumer Business Group; Ernest S. Grush, Corporate Technical Specialist Environmental & Safety Engineering; and John M. Rintamaki, Group Vice President and Chief of Staff. Plaintiffs noticed the depositions for Kansas City, but the parties later agreed to take them (if at all) at Ford's headquarters in Michigan.

Ford requested that plaintiffs specify "the discoverable subject matter" because Ford could not "conceive of any discoverable information which could not be obtained through less burdensome and obtrusive means." Ford suggested that plaintiffs depose engineers, instead of the CEO and other high-level employees. Plaintiffs immediately responded:

> Your statement that there are engineers at Ford who have knowledge but "who are not the CEO or in similar high-level positions" is the very reason that I want to take the depositions of these gentlemen. I believe that we are entitled to have the testimony of high-level management personnel who are empowered with the decision making responsibility on the kinds of product defect issues that are central to our case.

Throughout this discovery dispute, plaintiffs stress that they wish to inquire about Ford's current conduct, in order to support their claim for punitive damages. Specifically, plaintiffs want to ask about tread-separation problems with other Ford products—the 1991–2001 "Explorers"—equipped with Firestone tires. In 2000, Firestone recalled some of these tires; in 2001, Ford expanded the recall. By deposing the people "out front," plaintiffs would contrast Ford's recall of the Explorers's tires, with Ford's failure to recall the 1987 Bronco II or its tires.

Ford moved to protect its "apex" employees from annoyance, embarrassment, oppression, and undue burden and expense. *Rule 56.01(c)*. Nasser, Baughman, and Rintamaki—but not Grush submitted affidavits asserting no personal involvement in designing and developing the Bronco II, or selecting its tires.

The parties briefed the motion, and orally argued it before the circuit court. The respondent judge ordered the depositions taken the following week. The judge noted that lower-level employees had been deposed in prior Bronco II cases, the trial date was imminent, and the deponents may have discoverable information. Ford requested reconsideration and a stay, which were denied.

## II.

■ Discovery allows access to relevant, non-privileged information, while minimizing undue expense and burden. *State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 927 (Mo. banc 1992); *State ex rel. Gamble Constr. Co. v. Carroll*, 408 S.W.2d 34, 38 (Mo. banc 1966). Discovery should be conducted on a "level playing field," without affording either side a tactical advantage. *Plank*, 831 S.W.2d at 929; *State ex rel. Pitts v. Roberts*, 857 S.W.2d 200, 201–02 (Mo. banc 1993). "The discovery process was not designed to be a scorched earth battlefield upon which the rights of the litigants and the efficiency of the justice system should be sacrificed to mindless overzealous representation of plaintiffs and defendants." *State ex rel. Madlock v. O'Malley*, 8 S.W.3d 890, 891 (Mo. banc 1999).

■ Corporations act only through natural persons. *Pitts*, 857 S.W.2d at 201–02 & n. 2. Rank-and-file employees perform most tasks, while top-level employees are responsible for coordination and oversight.

See, e.g., secs. *351.310*, *351.360 RSMo 2000*.

■ In *Plank*, this Court noted that a party may be disadvantaged when seeking to depose an organization, due to the difficulty of knowing which natural persons speak for it. *Plank*, 831 S.W.2d at 929. To put organizations and natural persons on equal footing, an organization must provide a person whose testimony binds it, if so requested. *Rule 57.03(b)(4)*; *Plank*, 831 S.W.2d at 929.

■ This case presents the converse: disadvantage to an organization if its top-level employees are deposed frequently and unnecessarily. Such top-level depositions may be annoying, burdensome, expensive, and oppressive. *Fogelbach v. Director of Revenue*, 731 S.W.2d 512, 513 (Mo.App.1987).

This annoyance, burden, and expense may be unnecessary. *State ex rel. Woytus v. Ryan*, 776 S.W.2d 389, 394 (Mo. banc 1989); *State ex rel. Anheuser v. Nolan*, 692 S.W.2d 325, 328 (Mo.App.1985). Persons lower in the organization may have the same or better information. *Fogelbach*, 731 S.W.2d at 513. Other methods of discovery may make a top-level deposition unnecessary. E.g., *Rule 57.03(b)(4)*. See also *Woytus*, 776 S.W.2d at 394.

■ Opposing litigants may depose top-level executives who have discoverable information. *Rules 56.01(b)(1)*, *57.03(a)*. Even so, an opposing litigant may not use the threat of a burdensome deposition as a bargaining chip or annoying tactic. See *Fogelbach*, 731 S.W.2d at 513.

California and Texas attempt to resolve this conflict by an "apex" rule: An officer at the apex of the corporate hierarchy cannot be deposed unless the employee has special or unique knowledge, or the information is first pursued by less intrusive means. See, e.g., *Liberty Mut. Ins.*

*Co. v. Superior Court of San Mateo County,* 10 Cal.App.4th 1282, 13 Cal.Rptr.2d 363, 367–68 (1992); *Crown Cent. Petroleum Corp. v. Garcia,* 904 S.W.2d 125, 128 (Tex.1995).

■ This Court declines to adopt an "apex" rule. Instead, depositions of top-level decision-makers should proceed in accordance with Rules 56.01(b)(1) and 56.01(c).

■ A top-level employee—like anyone else—should not be deposed unless the information sought is relevant, or reasonably calculated to lead to the discovery of admissible information. *Rule 56.01(b)(1); State ex rel. Wilfong v. Schaeperkoetter,* 933 S.W.2d 407, 410 (Mo. banc 1996). The party seeking discovery has the burden of proving discoverability. *Id.*

■ Even if the top-level employee has discoverable information, the organization or its top-level employee may seek a protective order. *Rule 56.01(c).* The party or person opposing discovery has the burden of showing "good cause" to limit discovery. *Id.*

■ A protective order should issue if annoyance, oppression, and undue burden and expense outweigh the need for discovery. *Rule 56.01(c); Woytus,* 776 S.W.2d at 391; *Anheuser,* 692 S.W.2d at 328. For top-level employee depositions, the court should consider: whether other methods of discovery have been pursued; the proponent's need for discovery by top-level deposition; and the burden, expense, annoyance, and oppression to the organization and the proposed deponent. See *Anheuser,* 692 S.W.2d at 328.

### III.

■ Prohibition is the proper remedy for an abuse of discretion during discovery. *Plank,* 831 S.W.2d at 927–28. Trial judges have broad discretion in administering the rules of discovery. *Rule 56.01(d); State ex rel. Crowden v. Dandurand,* 970 S.W.2d 340, 343 (Mo. banc 1998). The trial court abuses discretion if its order is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration. *Giddens v. Kansas City S. Ry. Co.,* 29 S.W.3d 813, 819 (Mo. banc 2000). The writ petitioner (here Ford) has the burden to prove abuse of discretion. *State ex rel. Health Midwest Dev. Group, Inc. v. Daugherty,* 965 S.W.2d 841, 844 (Mo. banc 1998).

Before both the circuit court and this Court, Ford claims the depositions were not reasonably calculated to lead to the discovery of admissible evidence. At the motion hearing, however, Ford orally conceded relevance for the purposes of discovery. Accordingly, the circuit court did not abuse discretion in finding the proposed deponents had discoverable information.

Next, Ford included Grush among the employees it seeks to protect, but at the same time offers him as an alternative deponent to Nasser, Baughman, and Rintamaki. Ford thus concedes that Grush's deposition is proper.

■ Also, Nasser's tenure as CEO and President ended while this writ was pending. Since he is no longer a top-level Ford employee, Ford's arguments against his deposition are moot. *State ex rel. Reed v. Reardon,* 41 S.W.3d 470, 473 (Mo. banc 2001).

■ As to Baughman and Rintamaki, Ford has shown good cause for a protective order, to date. *Rule 56.01(c).* Ford showed that plaintiffs have not sought the information through less intrusive means, plaintiffs' need for the discovery is slight, and there is significant burden, expense,

annoyance, and oppression to Ford and these top-level officers.

First, plaintiffs did not pursue the same information by available, less burdensome means. These top-level depositions are the first discovery contrasting the Bronco II with the Explorers. Plaintiffs noticed Ford for a Rule 57.03(b)(4) deposition, but have not yet taken that deposition. Plaintiffs have not deposed other employees regarding the contrast.

As the circuit court noted, Plaintiffs have discovery from prior cases. But that discovery concerns only the Bronco II, without contrasting Ford's handling of the Bronco II and Explorer. Thus, plaintiffs have not sought the *same* information through less intrusive means.

Second, plaintiffs' need for the discovery is slight, based on the record at this time. Plaintiffs cite numerous public statements showing that these executives are familiar with the Explorers and their Firestone tires. Plaintiffs then assert that the Firestone tire recall shows how Ford should have recalled the Bronco II and its Continental tires. Plaintiffs' underlying premise is unsupported (at this point): that the products and their alleged defects are so similar that conduct towards one (the Explorers) illuminates non-conduct towards the other (the Bronco II).

■■■■■■ For punitive damages, evidence of current conduct is admissible only if its connection to the liability-creating acts shows "defendant's disposition, intention, or motive in the commission of the particular acts for which damages are claimed." *Charles F. Curry & Co. v. Hedrick*, 378 S.W.2d 522, 536 (Mo.1964). Recalling (or failing to recall) a product may illumine defendant's disposition toward that product. *Bhagvandoss v. Beiersdorf, Inc.*, 723 S.W.2d 392, 398 (Mo. banc 1987); *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 178–79 (Mo.App. W.D.1997)

(en banc); *Maugh v. Chrysler Corp.*, 818 S.W.2d 658, 664 (Mo.App.1991). However, the recall of *different products* cannot illumine defendant's disposition in designing, manufacturing, marketing, or selling the *offending product.* See *State ex rel. Kawasaki Motors Corp. v. Ryan*, 777 S.W.2d 247, 252–54 (Mo.App.1989). If one recall legally proves that a different product also should have been recalled, companies will be deterred from making recalls. Punitive damages should deter wrongful conduct; they should not encourage companies to ignore or disavow—rather than remedy—product defects. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110 (Mo. banc 1996); *Maugh*, 818 S.W.2d at 664.

■■■■■ Other recalls are relevant only if the products and their alleged defects are the same or substantially similar. See *Kawasaki*, 777 S.W.2d at 252–54; *Herman v. Andrews*, 50 S.W.3d 836, 841–44 (Mo.App. 2001). Here, Ford has shown that the products are not substantially similar. The 1987 Bronco II and Explorers are different vehicles, designed and marketed at different times. Their tires were made at different times by two different companies, Continental and Firestone. In response to questions by this Court about the subsequent remedial measures doctrine, plaintiffs even argued that the Bronco II and Explorers are different products. Plaintiffs have little need to depose Ford's top-level employees, absent a finding of substantial similarity between the products.

Third, Ford is a huge organization, with more than 300,000 employees and extensive litigation. As Executive Director–Trucks and Vice President–Chief of Staff, Baughman and Rintamaki are senior managers for Ford. Unnecessarily deposing these executives is annoying, unduly burdensome and expensive, and oppressive.

Finally, the nearness of trial does not justify the depositions. Last-minute depositions could be even more burdensome, expensive, annoying, and oppressive because scheduling options are limited.

In sum, plaintiffs should not begin a tangential inquiry by deposing Ford's top-level employees. The undue burden and expense, annoyance, and oppression outweigh the need for information, which is available by other means. Based on the record at this time, the circuit court abused discretion by not entering a protective order.

### IV.

After this Court issued its preliminary writ (but before oral argument), William Clay Ford, Jr., succeeded Jacques Nasser as Ford President and CEO. Plaintiffs noticed the new CEO for a deposition, and Ford moved to quash, for a stay, and for a protective order. Plaintiffs subsequently withdrew the deposition notice. This Court took Ford's motion with the case.

Ford concedes that its motion for a stay and to quash is moot. It contends, however, that the motion for a protective order is justiciable.

A protective order can be made "[u]pon motion by a party or by the person *from whom discovery is sought." Rule 56.01(c)* (emphasis added). Here, plaintiffs no longer seek discovery from William Ford. The issue is moot. *Reed,* 41 S.W.3d at 473.

Ford's motion to quash, to stay, and for a protective order is overruled.

### V.

Based on the state of the record at this time, the preliminary writ of prohibition is made absolute as to the depositions of Thomas D. Baughman and John M. Rintamaki.

LIMBAUGH, C.J., WHITE, WOLFF and PRICE, JJ., and DOLAN, Sp.J., concur. RICHTER, Sp.J., concurs in separate opinion filed.

LAURA DENVIR STITH and RICHARD B. TEITELMAN, JJ., not participating.

ROY L. RICHTER, Special Judge, concurring.

I concur in the majority's decision not to adopt an "apex" rule, but to apply Rules 56.01(b)(1) and 56.01(c) in deciding when a protective order is justified. The term "apex" used by California and Texas might better be characterized as a "figurehead" rule—which more accurately describes the position held by the person whose deposition is sought.

While not adopting an "apex" or "figurehead" rule, the language contained in *Liberty Mutual Ins. Co. v. Superior Court,* 10 Cal.App.4th 1282, 13 Cal.Rptr.2d 363 (1992),[1] and *Crown Central Petroleum*

---

1. We conclude it amounts to an abuse of discretion to withhold a protective order when a plaintiff seeks to depose a corporate president, or corporate officer at the apex of the corporate hierarchy, absent a reasonable indication of the officer's personal knowledge of the case and absent exhaustion of less intrusive discovery methods. . . . .

 Furthermore, "apex" depositions such as the one in this case, when conducted before less intrusive discovery methods are exhausted, raise a tremendous potential for discovery abuse and harassment. Vast numbers of personal injury claims could result in the deposition of the president of a national or international company whose product was somehow involved. It would be unreasonable to permit a plaintiff to begin discovery by deposing, for instance, the chief executive officer of a major automobile manufacturer when suing over a design flaw in a brake shoe—especially if we were to accept real party's argument that the mere act of copying the chief executive officer with a few pieces of correspondence creates

*Corp. v. Garcia,* 904 S.W.2d 125 (Tex. 1995),[2] will provide guidance to judges faced with requests for protective orders.

For the foregoing reasons, I concur.

STATE of Missouri, Respondent,

v.

Thomas J. NORSWORTHY, Appellant.

No. SC 83906.

Supreme Court of Missouri,
En Banc.

April 9, 2002.

"constructive notice" justifying the deposition.....

Consistent with these federal decisions, we hold that when a plaintiff seeks to depose a corporate president or other official at the highest level of corporate management, and that official moves for a protective order to prohibit the deposition, the trial court should first determine whether the plaintiff has shown good cause that the official has unique or superior personal knowledge of discoverable information. If not, as will presumably often be the case in the instance of a large national or international corporation, the trial court should issue the protective order and first require the plaintiff to obtain the necessary discovery through less intrusive methods. These would include interrogatories directed to the high-level official to explore the state of his or her knowledge or involvement in plaintiff's case; the deposition of lower level employees with appropriate knowledge and involvement in the subject matter of the litigation; and the organizational deposition of the corporation itself, which will require the corporation to produce for deposition the most qualified officer or employee to testify on its behalf as to the specified matters to be raised at the deposition. (§ 2025 Civ. Proc., subd. (d)(6).) Should these avenues be exhausted, and the plaintiff make a colorable showing of good cause that the high-level official possesses necessary information to the case, the trial court may then lift the protective order and allow the deposition to proceed. 10 Cal.App.4th 1282, 1287–1288, 13 Cal.Rptr.2d 363, 365–367.

2. When a party seeks to depose a corporate president or other high level corporate official and that official (or the corporation) files a motion for protective order to prohibit the deposition accompanied by the official's affidavit denying any knowledge of relevant facts, the trial court should first determine whether the party seeking the deposition has arguably shown that the official has any unique or superior personal knowledge of discoverable information. If the party seeking the deposition cannot show that the official has any unique or superior personal knowledge of discoverable information, the trial court should grant the motion for protective order and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods. Depending upon the circumstances of the particular case, these methods could include the depositions of lower level employees, the deposition of the corporation itself, and interrogatories and requests for production of documents directed to the corporation. After making a good faith effort to obtain the discovery through less intrusive methods, the party seeking the deposition may attempt to show (1) that there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less intrusive methods of discovery are unsatisfactory, insufficient or inadequate. If the party seeking the deposition makes this showing, the trial court should modify or vacate the protective order as appropriate. As with any deponent, the trial court retains discretion to restrict the duration, scope and location of the deposition. If the party seeking the deposition fails to make this showing, the trial court should leave the protective order in place. 904 S.W.2d 125, 128.