

# In the Missouri Court of Appeals
## Eastern District
### DIVISON FOUR

| | | |
|---|---|---|
| RANDOLPH W. WILKINS, | ) | No. ED101493 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | |
| OFFICE OF THE MISSOURI ATTORNEY | ) | Honorable Robin Ransom Vannoy |
| GENERAL and CHRIS KOSTER, | ) | |
| | ) | |
| Respondents. | ) | Filed: June 16, 2015 |

### *Introduction*

Randolph Wilkins (Plaintiff) appeals the judgment of the Circuit Court of the City of St. Louis in favor of the Office of the Missouri Attorney General (OMAG) on his claim that the OMAG discriminated against him on the basis of age and disability in violation of the Missouri Human Rights Act (MHRA). Plaintiff asserts that the trial court abused its discretion in granting the OMAG's motion for a protective order and to quash the trial subpoena served on Missouri Attorney General Chris Koster. We affirm.

### *Factual and Procedural Background*

In January 2006, Plaintiff, then age 57 and hearing impaired, began working as an enforcement investigator in the OMAG's consumer fraud division. Citing interpersonal problems and insubordination, the OMAG terminated Plaintiff's employment in March 2010.

Plaintiff filed a petition against the OMAG and Attorney General Koster alleging discrimination and wrongful discharge in violation of the MHRA (Count I), Missouri common law (Count II), and Article IV, Section 19 of the Missouri Constitution, which grants hiring preference to former members of the United States armed services (Count III). In addition to filing answers, Attorney General Koster filed a motion to dismiss all counts of Plaintiff's petition, and the OMAG filed a motion to dismiss Counts II and III. After hearing arguments on the defendants' motions to dismiss, the trial court entered an order dismissing Count II against the OMAG and Count III against the OMAG and Attorney General Koster.

During pre-trial discovery, Plaintiff sought to depose Attorney General Koster. The defendants refused to produce Attorney General Koster and suggested that Plaintiff instead request a corporate designee deposition pursuant to Rule 57.03(b)(4).[1] Plaintiff filed notice of a Rule 57.03(b)(4) deposition, and the defendants produced Attorney General Koster's deputy chief of staff, Rhonda Meyer. At her deposition, which does not appear in the record on appeal, Ms. Meyer testified that Attorney General Koster had no direct involvement in or firsthand knowledge of the events leading to Plaintiff's termination.[2]

Plaintiff subsequently dismissed with prejudice his remaining claims against Attorney General Koster. As a result, the sole count before the trial court was Plaintiff's Count I against the OMAG. In Count I, Plaintiff alleged that the OMAG discriminated against him on the basis

---

[1] "Rule 57.03(b)(4) addresses the ability to take the deposition of an organization by requiring the organization to produce a representative with knowledge of the subject matters itemized in the deposition notice." State ex rel. Deutsche Bank Nat'l Trust Co. v. Chamberlain, 372 S.W.3d 24, 26 n.2 (Mo.App.W.D. 2012).

[2] The record on appeal contains neither the notice of Rule 57.03(b) deposition nor a transcript of Ms. Meyer's deposition. However, there is no dispute that Plaintiff deposed Ms. Meyer and Ms. Meyer testified that Attorney General Koster "had no knowledge of the circumstances of the decision to fire [Plaintiff]" and did not participate in the hiring, firing, promotion, and salary-setting practices for investigators at the OMAG.

2

of age and disability in: failing to grant Plaintiff a pay increase; paying younger investigators higher salaries; allowing Plaintiff's co-workers to harass him by lowering the volume on his electronic devices and complaining that he spoke too loudly; failing to promote Plaintiff to the position of director of the consumer fraud division; and discharging Plaintiff after he complained of discrimination.

Prior to trial, Plaintiff subpoenaed Attorney General Koster to testify, and the OMAG filed a motion for protective order and to quash the subpoena.[3] In its memorandum in support of the motion, the OMAG urged the trial court to enter a protective order and quash the subpoena issued to Attorney General Koster "because he was not involved in the employment decisions at issue, he does not have first-hand knowledge of any of the events contained in the petition, and plaintiff does not have a compelling need for Koster's testimony at trial." Plaintiff filed a memorandum in opposition to the OMAG's motion, asserting that Attorney General Koster illegally delegated his "statutory authority to appoint, fix the compensation of, and discharge investigators" and "[t]here is nothing unreasonable or unduly oppressive about having Attorney General Chris Koster testify about his exercise of his statutory authority to appoint, compensate and discharge investigators as those are the key issues to be tried in this case." After hearing

---

[3] We note that the OMAG filed its motion for a protective order and to quash the subpoena pursuant to Rule 56.01, which sets forth the "General Provisions Governing Discovery." Rule 56.01(c) provides: "Upon motion by a party or by the person *from whom discovery is sought*, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Rule 56.01(c) (emphasis added). See also Rule 57.09(b)(1) (trial court may quash a subpoena for a deposition "if it is unreasonable or oppressive"); Mo. Rev. Stat. § 491.100.3 (trial court may quash a subpoena that commands a person to produce "objects, books, papers, or documents . . . if it is unreasonable and oppressive . . . ."). Although Rule 56.01 applies to discovery subpoenas, Plaintiff does not challenge the trial court's authority to grant the protective order and quash the trial subpoena.

arguments, the trial court entered an order granting, without explanation, the OMAG's motion for a protective order.

Before seating the jury on the first day of trial, the trial court allowed Plaintiff's counsel to "make an argument on the record regarding the Court's decision to quash the subpoena that was directed to Attorney General Chris Koster." Plaintiff's counsel stated that, pursuant to Section 27.020.3, the attorney general may appoint and "fix the compensation" of investigators who "shall serve during the pleasure of the attorney general." Mo. Rev. State. 27.020.3. According to Plaintiff's counsel, "[t]hat means that, ultimately, regardless of how he delegated or sought to delegate the decision, it's ultimately his decision to make who works for him, how much they're paid and whether it is still his pleasure that they remain in the office." Plaintiff's counsel argued that "an issue in this case" is whether Attorney General Koster legally delegated his authority, and she explained that she "subpoenaed [Attorney General Koster] to come to trial and explain who or if he did delegate that authority, and what, if any, oversight he exercised to make sure that when people did exercise that power that they did it within the confines of the MHRA."

In response, counsel for the OMAG asserted that "there is no issue before the Court about the interpretation of the statutory authority of the Attorney General to delegate his powers to run his office as he sees fit." Defense counsel argued that injecting the issue of Attorney General Koster's statutory authority and discretion in employment decisions would "mislead and confuse the jury" and would "require the jury to get into issues far beyond the pleadings." Defense counsel also stressed that Attorney General Koster was no longer an individual defendant in the case and "[t]here has been no showing that the Attorney General is in possession of . . . information that is essential to plaintiff's case." After hearing arguments, the trial court

4

announced that its ruling on the protective order "will stand" and Attorney General Koster "will not be called in this case."

The trial court conducted a six-day jury trial in February 2014.  Plaintiff testified at trial and presented, among other witnesses, Don King, the former director of the consumer fraud division.  The OMAG presented the testimony of:  several OMAG investigators; Doug Ommen, the former chief counsel of the consumer fraud division; and Shelly Land, the OMAG investigator who succeeded Mr. King as director of the consumer fraud division in Spring 2010.  Mr. Ommen testified that, at the recommendation of Mr. King, he decided to promote Ms. Land, who was then 48 years of age, and not Plaintiff, to the position of director of the consumer fraud division.  Mr. Ommen also testified that he made the decision to terminate Plaintiff's employment because Plaintiff had "difficulty to work on a team" and behaved insubordinately and disrespectfully at a meeting with Mr. Ommen and Ms. Land on March 1, 2010.  Mr. Ommen maintained that neither age nor disability was a factor in his decisions not to promote and to terminate Plaintiff.

After the close of evidence, the trial court submitted to the jury verdict directors on Plaintiff's claims for discrimination based on age, discrimination based on disability, and retaliatory discharge.  The jury returned a verdict in favor of the OMAG on all three claims.  Plaintiff filed a motion for new trial, alleging, among other things, that the trial court erred in "prohibiting Plaintiff from subpoenaing Attorney General Chris Koster to testify at his trial . . . ."  The trial court denied Plaintiff's motion for new trial without a hearing.  Plaintiff appeals.

### Standard of Review

"A trial court has broad discretion to admit or exclude evidence, and we presume that a ruling within the trial court's discretion is correct."  Coyle v. St. Louis, 408 S.W.3d 281, 289

(Mo.App.E.D. 2013).  In reviewing a trial court's decision to exclude evidence, the focus is not on whether the evidence was admissible but on whether the trial court abused its discretion in excluding it.  Id.  A trial court abuses its discretion when its ruling "is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration."  Lozano v. BNSF Ry. Co., 421 S.W.3d 448, 451 (Mo. banc 2014) (quotation omitted).  "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion."  Id. (quotation omitted).

"Even if the trial court abused its discretion in excluding evidence, this [c]ourt is loathe to vacate a jury's verdict and resulting judgment on such grounds."  Id.  "[T]o obtain a reversal based on the exclusion of evidence, an appellant must demonstrate that the excluded evidence would have materially affected the merits of the cause of action."  Coyle, 408 S.W.3d at 290 (internal quotation omitted).

*Discussion*

In his sole point on appeal, Plaintiff claims the trial court abused its discretion in granting the OMAG's motion for a protective order and to quash the trial subpoena served on Attorney General Koster because:  (1) "a party has the right to require attendance at the trial of any witness to meet the issues raised in the pleadings"; and (2) "the trial subpoena served on Attorney General Koster was not unreasonable or oppressive."   He further contends that, by quashing the trial subpoena of Attorney General Koster, the trial court precluded Plaintiff from presenting evidence "that in his judgment was required to prove the issues raised in his petition." The OMAG counters that the trial court properly quashed the trial subpoena because Plaintiff did

6

not have a compelling need for Attorney General Koster's testimony and Plaintiff suffered no prejudice as a result of the trial court's decision.

"[A] litigant has a right as of course to require the attendance at trial of those witnesses . . . as in his judgment are required by him to meet the issues raised in the action." State ex rel. R.W. Filkey, Inc. v. Scott, 407 S.W.2d 79, 82 (Mo.App. 1966). Although our courts have not addressed whether Missouri law limits a litigant's right to subpoena high-ranking executives to testify at a trial,[4] the Missouri Supreme Court has recognized, in the context of pre-trial discovery, that even if a top-level employee "has discoverable information, the organization or its top-level employee may seek a protective order." State ex rel. Ford Motor Co. v. Messina, 71 S.W.3d 602, 606 (Mo. banc 2002) (citing Rule 56.01(c)). This is because "top-level depositions" may cause unnecessary annoyance, burden, and expense where "[p]ersons lower in the organization may have the same or better information." Id. The Messina Court held that a party seeking a protective order has the burden of establishing "good cause" to prohibit discovery from a top-level executive.[5] Id. at 607. We believe that Messina's recognition of limitations upon a litigant's right to subpoena top-level executives for deposition logically extends to subpoenas for trial, "particularly when the scope of admissible evidence at trial is narrower than the scope of discoverable information."[6] Cox v. Kansas City Chiefs Football Club, Inc., Case No. WD 76616, 2014 WL 3818674, *18 (Aug. 5, 2014) (cause ordered transferred Dec. 23, 2014).

---

[4] But see Cox v. Kansas City Chiefs Football Club, Inc., Case No. WD 76616, 2014 WL 3818674, *18 (Aug. 5, 2014) (cause ordered transferred Dec. 23, 2014) (trial court did not err in quashing trial subpoena for top-level corporate executive).

[5] The Messina Court directed trial courts to consider the following factors when determining whether to issue a protective order prohibiting the deposition of a top-level employee: "whether other methods of discovery have been pursued; the proponent's need for discovery by top-level deposition; and the burden, expense, annoyance, and oppression to the organization and the proposed deponent." Messina, 71 S.W.3d at 607.

[6] We also see no reason that this rule would apply in the private sector and not the public sector.

7

As neither party disputed that Attorney General Koster is a top-level executive, the question before the trial court was whether the OMAG demonstrated good cause for quashing the trial subpoena of Attorney General Koster. In its motion for a protective order and to quash the subpoena, the OMAG alleged that "discovery has shown that [Attorney General Koster] was not involved in any of the employment decisions related to [Plaintiff]" and Attorney General Koster "does not have any first-hand knowledge about the events in the Petition . . . ." The OMAG further alleged that "[r]equiring Koster to testify at trial would substantially impede his ability to perform his duties as Attorney General for the State of Missouri."

The evidence before the trial court when it ruled on the OMAG's motion to quash – specifically, Ms. Meyer's deposition testimony – supported the OMAG's assertion that Attorney General Koster had no involvement in or knowledge of employment decisions affecting Plaintiff. Plaintiff did not contradict this contention in his memorandum opposing the motion to quash. Instead, Plaintiff argued that Attorney General Koster improperly delegated his statutory authority to appoint, compensate, and terminate the OMAG's investigators and "only Chris Koster can provide the testimony needed to resolve the legal issue of his delegation of authority."

Plaintiff fails to explain how the trial court's finding of good cause was against the logic of the circumstances or arbitrary and unreasonable. Based on our review of the record, we conclude that the trial court could reasonably have determined that Attorney General Koster's testimony on the issue of statutory authority was of limited probative value and potentially outweighed by the risk of juror confusion. The trial court also could reasonably conclude that, even if Attorney General Koster's delegation of statutory authority was relevant to Plaintiff's case, Plaintiff was able to present this evidence by less burdensome and oppressive means (such as Ms. Meyer's testimony). "[I]f the action of the trial court was proper on any ground, . . . such

8

action will be upheld." Lozano, 421 S.W.3d at 451 (quoting Franklin v. Friedrich, 470 S.W.2d 474, 476 (Mo. 1971)). We therefore conclude that the trial court's decision to grant a protective order and quash the subpoena to Attorney General Koster did not constitute an abuse of discretion.

We further note that Plaintiff failed to demonstrate prejudice suffered from the exclusion of Attorney General Koster's trial testimony. "In order to obtain a reversal based on the exclusion of evidence, an appellant must demonstrate that the excluded evidence would have materially affected the merits of the cause of action." Blanks v. Fluor Corp., 450 S.W.3d 308, 393 (Mo.App.E.D. 2014). "In other words, the appellant must demonstrate resulting prejudice by showing that the outcome of his case would have been different had the excluded evidence been admitted." Id. Plaintiff offers only conclusory allegations and speculation that evidence relating to Attorney General Koster's statutory authority would have helped him prevail on his claim of age and disability discrimination. Point denied.

### *Conclusion*

The judgment of the trial court is affirmed.

_____

Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.

9