**STATE ex rel. FORD MOTOR COMPANY, Relator,**

v.

**The Honorable Michael W. MANNERS, Respondent.**

No. SC 88392.

Supreme Court of Missouri, En Banc.

Dec. 4, 2007.

Susan Ford Robertson, Columbia, Robert T. Adams, Michael J. Kleffner, Anne M. Carlson, Shook, Hardy & Bacon, LLP, Kansas City, MO, for Relator.

Kenneth K. Vuylsteke, St. Louis, Daniel T. DeFeo, Angela G. Cahill, The DeFeo Law Firm, P.C., Kansas City, John Harl Campbell, Osage Beach, MO, Omar F. Medina, Medina Law Firm, Tampa, FL, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

## I.

The parents of Justin Hachinsky filed a wrongful death/products liability lawsuit against Ford Motor Company after their son was killed in a one car rollover accident involving a 2002 Ford Explorer. During discovery, Ford produced a number of documents subject to a non-sharing protective order. After settlement, the trial court vacated the non-sharing protective order to the extent that the documents could be used in other litigation against Ford. Ford requested a writ of prohibition. A preliminary writ issued and is now made absolute.

## II.

Because of the complexity of discovery disputes below, the trial court appointed a discovery commissioner who issued twenty-four orders throughout the course of discovery.[1] The commissioner issued both a sharing protective order and a non-sharing protective order restricting the dissemination of certain documents. The sharing protective order stated that protected documents, meaning documents proven by Ford to contain confidential information or trade secrets, could only be disseminated or disclosed to the following persons:

(a) Plaintiff's and defendant's counsel of record in this case, including other members and employees of counsels' law firm and any other counsel associated to assist and who participate in the preparation or trial of this case;

(b) Experts and non-attorney consultants retained by the parties for the preparation or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford;

(c) The Court (including the Discovery Commissioner), the Court's staff, witnesses and the jury in this case; and

(d) Unless otherwise ordered by the Trial Court or Discovery Commissioner (following a motion raising issues of exceptional sensitivity due to current undisclosed proprietary information affecting Ford's competitive position), attorneys representing Plaintiffs and the experts and consultants retained by the plaintiffs in other cases pending against Ford involving Ford Explorers (including Mercury Mountaineers) in which occupant restraints, roof strength, roof crush or stability are at issue, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford.

The non-sharing protective order provided that the protected documents may be shown, disseminated, or disclosed only to the following persons:

(a) Counsel of record in this case, including members of counsel's law firm and any other attorney retained to assist in the preparation or trial of this case;

(b) Employees of counsel of record in this case, who assist in the preparation or trial of this case; and

(c) Experts and consultants retained by counsel of record in this case for the preparation or trial of this case, provided that no disclosure shall be made to any expert or consultant

---

1. The Court's Civil Rules Committee is considering revisions to Rules 57.06 and 68.01 governing appointment masters and deposition commissioners. The authority of the trial court's appointment of a discovery commissioner is not at issue on this appeal.

who is employed by a competitor of Ford.

Neither order stated what would happen to the documents at the end of the case.

## III.

The non-sharing protective order protected five categories of documents: (1) suspension orders, (2) records management program documents, (3) Interactive Vehicle Dynamics, Electronic Stability Control, and Roll Stability Control documents (IVD/ESC/RSC), (4) the Vehicle Dynamic list (VEHDYN list), and (5) computer-aided engineering files (CAE files).

The first two categories of documents pertain to Ford's practices for document retention. The records management documents provide information regarding the retention procedures for company records, including recordkeeping requirements and record retention schedules. The suspension orders are issued by attorneys at the general counsel for Ford, instructing employees to retain selected categories of documents beyond periods in the records management program for potential disclosure in anticipated or pending litigation or administrative proceedings.[2]

The remaining four categories relate to Ford's product engineering and development. The IVD/ESC/RSC documents contain information used to develop computer coding for the algorithm used in Ford's electronic stability control system. The VEHDYN list is a list of data fields compiled from Ford's VEHDYN database, which contains information on vehicle dynamics such as ride, steering, and handling. The CAE files contain data from "computer-aided engineering" referring to the use of computer models of proposed, preliminary, or final vehicle components to conduct a wide variety of simulated performance tests during vehicle development.

Throughout discovery, there was much controversy between the parties over the non-sharing protective orders, necessitating involvement from the commissioner and the court to clarify and ensure compliance with the orders. Plaintiffs filed two separate motions with the court to vacate the non-sharing protective order for the suspension documents. The first motion, filed November 1, 2006, argued that the non-sharing protective order was improper because the ability to share these documents in other litigation against Ford would promote efficiency in the discovery process and Ford has a history of discovery abuse in other cases. After hearing oral arguments from both parties, the court denied the motion.[3] After the court's order, Ford produced 600 pages of suspension orders to plaintiffs. The second motion, filed on November 17, 2006, argued that the non-sharing protective order should be vacated because after reviewing the documents, plaintiffs alleged that Ford had made false representations leading to an erroneous finding of privilege for the suspension orders in other litigation.[4] The court overruled this motion five days later.

2. The commissioner, reviewing the orders in camera, found that the suspension orders were not privileged and ordered Ford to produce them.

3. In the order, the court did not make any conclusion as to allegations of prior protective orders in other litigation. The court stated it was "mindful of the rapidly approaching trial setting for this cause and enters this

Order to allow expeditious completion of discovery."

4. Specifically, plaintiffs alleged that Ford misrepresented the subject matter of the suspension orders via false affidavits, briefs, and argument to the court in *Robeck v. Ford Motor Co.*, case No. 04–4858, in the United States District Court for the District of Minnesota. In addition, plaintiffs claimed that Ford pre-

Ford insisted that in addition to the commissioner's order awarding non-sharing protection to the IVD/RSC/ESC documents and the VEHDYN list, the plaintiffs sign the non-sharing protective agreement. Plaintiffs initially refused. Ultimately, plaintiffs were ordered to and signed the non-sharing protective order prior to receiving the IVD/ESC/RSC documents.

The commissioner also ordered Ford to allow plaintiffs to conduct live computer searches of Ford's CAE databases in Dearborn, Michigan, subject to the non-sharing protective order. Ford sought a writ of prohibition and was denied by the Court of Appeals, Western District, and this Court. Ford complied with the order and allowed plaintiffs access to the CAE databases.

## IV.

The parties reached a settlement agreement. The settlement agreement did not contain any provisions addressing the non-sharing protective order. Plaintiffs then filed a motion asking the court to allow plaintiffs to retain the protected documents and to remove the non-sharing protective orders for each of the categories of documents, raising the same allegations as in the previous two motions. In addition, plaintiffs argued that the non-sharing protective order should be vacated because the reason for the orders, the facilitation of discovery, was no longer a concern. The court issued an order approving the wrongful death settlement. Nearly three weeks later, the court sustained plaintiffs' motion, allowing the plaintiffs to retain the documents subject to a sharing protective order. The order stated:

> The Court endorsed a non-sharing protective order to expedite discovery, with the hope of holding on to the trial date.

sented a different version of the suspension orders in *Helm v. Ford Motor Co.*, case No.

That concern is now moot. Defendant has failed to satisfy its burden to demonstrate why a sharing protective order will not adequately protect its interest.

Ford requested a writ of prohibition. After the court of appeals denied the petition, this Court entered a preliminary writ of prohibition. Ford now asks that this writ be made absolute to prohibit the court from enforcing this order.

## V.

### A.

"Prohibition is a discretionary writ that may be issued to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extra-jurisdictional power." *State ex rel. Broadway–Washington Assoc. v. Manners*, 186 S.W.3d 272, 274 (Mo. banc 2006). Prohibition is a proper remedy for an abuse of discretion or act in excess of jurisdiction in issuing, denying, or modifying a protective order for documents produced during discovery. *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 607 (Mo. banc 2002); *State ex rel. Upjohn Co. v. Belt*, 844 S.W.2d 467, 470 (Mo.App.1992).

The trial judge has broad discretion to determine the appropriateness and terms of the protective orders for documents produced during discovery. Rule 56.01(c); *State ex rel. General Motors Acceptance Corp. v. Standridge*, 181 S.W.3d 76, 78 (Mo. banc 2006); *State ex rel. Ford Motor Co.*, 71 S.W.3d at 607. Therefore, the decision to modify the terms of the protective order after it has been issued is also left to the discretion of the trial court. The trial court abuses its discretion if "its order is clearly against the logic of circumstances, is arbitrary and unreasonable, and

04–1199480 from the version produced in this litigation.

indicates a lack of careful consideration." *State ex rel. Ford Motor Co.*, 71 S.W.3d at 607. The writ petitioner has the burden to prove abuse of discretion. *Id.*

### B.

■ Rule 56.01(c) provides that the trial court may issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense upon motion by the party and a showing of good cause. Although the rule does not provide a standard for modification of the protective order, this issue has been discussed in many federal appellate court decisions. *See Stortz by Stortz v. Seier*, 835 S.W.2d 540, 541 (Mo. App.1992).

Courts have articulated several standards to govern the trial court's decisions on requests for modification.[5] One approach applies a strong presumption against modification if the producing party has reasonably relied on the protective order. *See AT & T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2nd Cir.2005); *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229–30 (2nd Cir.2001). In these circumstances, modification is only proper if there is "a showing

of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *Id.* A second approach determines if good cause still exists for continuing the protective order, using the same analysis that was used to initially grant the order with the additional factor of the party's reliance on the original order. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3rd Cir.1994); *Ballard v. Herzke*, 924 S.W.2d 652, 659–60 (Tenn.1996); *Wolhar v. Gen. Motors Corp.*, 712 A.2d 464, 469 (Del.Super.Ct.1997). A third approach favors the modification of protective orders to avoid duplicative discovery so long as reasonable restraints on collateral disclosure will protect an affected party's legitimate interests in privacy.[6] *See Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 475–76 (9th Cir.1992); *Public Citizen v. Liggett*, 858 F.2d 775, 790–92 (1st Cir.1988); *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299–1301 (7th Cir.1980). All three approaches consider the producing party's reliance on the order as a significant factor in determining if modification is proper.[7] Arguably, the standards recognize the same controlling criteria and differ only in the weight that should be

---

5. In the majority of these cases, the standard for modification is applied in the context of a third party seeking to intervene for the purposes of modifying a protective order to gain access to the documents for other pending litigation. Here, there is a slightly different situation because the party seeking modification was a party in the action where the non-sharing protective order was issued.

6. Under this approach, courts have found that any legitimate interests in privacy can be accommodated by placing the third party under the same use and disclosure restrictions contained in the original order, amending the protective order to include the third party instead of vacating the protective order. *See Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1134 (9th Cir.2003); *Wilk*, 635 F.2d at 1301.

7. Reliance must be reasonable to preclude modification. Certain types of protective orders may not justify reliance by the parties, such as orders that are on their face temporary or limited, *see S.E.C.*, 273 F.3d at 231; *Gambale v. Deutsche Bank*, 377 F.3d 133, 142 n. 7 (2nd Cir.2004), or blanket protective orders, which are overinclusive and do not require the party to show good cause for confidentiality as to any individual documents, *see Beckman*, 966 F.2d at 475–76; *Foltz*, 331 F.3d at 1138. Other decisions examine the extent the order induced the party to allow discovery or settle the case to determine the significance of the party's reliance. *See Pansy*, 23 F.3d at 790.

given to the criteria in their balancing.[8]

A Missouri decision has also considered this question in a slightly different context. In *State ex rel. Upjohn v. Belt*, 844 S.W.2d 467, 468 (Mo.App.1992), a third party drug manufacturer was subpoenaed to produce documents in a criminal case. The documents were produced subject to a protective order of confidentiality that "limited counsel's use of the Upjohn documents to the confines of the criminal case and prohibited the further dissemination of the documents." *Id.* The order also required the defendant to return all documents to Upjohn within 15 days after the conclusion of the criminal case. *Id.* The day after the jury found the defendant guilty of murder, she committed suicide in her cell. *Id.* at 469. Thereafter, the defendant's attorney sought to dissolve the protective order and retain the documents. *Id.* After noting that the death of the client deprived the attorney of standing to seek modification of the protective order, the court stated that:

> It should further be noted that even aside from the question of standing, elementary precepts of fairness should prevent the entry of any order modifying the protective order. Upjohn produced the documents for Wacaser's attorneys only after the court entered a protective order insuring to the greatest possible degree that the documents would remain confidential. For the court to renege on its action to protect the confidentiality of the documents would be manifestly unjust and unfair to Upjohn. *Id.* at 470.

In the present case, Ford's reliance on the non-sharing protective order was manifest. It refused to produce a majority of the documents at issue until the order was entered and plaintiff's attorneys were required to sign the same. Twice, Ford successfully defended against plaintiff's attempts to set the order aside. It would be unreasonable to conclude that Ford would have insisted on this protection and allowed access to their company files if the non-sharing protective order was only to last until the settlement of the dispute.

Plaintiffs argue that the protective order should be vacated relative to similar claims to avoid duplicative discovery. The Court agrees that discovery should be conducted in the most practical and cost efficient way possible. However, failure to respect the production of documents subject to protective orders would hinder, not further, this goal. If parties could not rely upon the protective orders and agreements, during and after the trial process, all productions of sensitive material would require litigation to this Court.[9]

Plaintiffs have not shown that Ford has denied the existence of the documents, failed to produce the documents, or otherwise conducted itself in a manner where the integrity of the discovery process in other cases require the modification of the orders here. Should they do so, no doubt the trial court below will fashion an appro-

---

**8.** For more information regarding the approaches for modification of a protective order in the federal courts, see Dennis J. Drasco, *Public Access to Information in Civil Litigation v. Litigant's Demand for Privacy: Is the "Vanishing Trial" an Avoidable Consequence?*, 2006 J. Disp. Resol. 155, 160 (2006), and Patrick S. Kim, *Third–Party Modification of Protective Orders under Rule 26(c)*, 94 Mich. L.Rev. 854, 856 (1995).

**9.** Plaintiffs also argue that there is no harm to Ford because the documents would be subject to the sharing protective order. Although this was found to be adequate protection in other cases, *see* note 5, these cases did not involve a non-sharing protective order. Ford specifically asked for, and obtained, a non-sharing protective order. To vacate the non-sharing protective order and place the documents under the sharing protective order negates the purpose of the non-sharing protective order.

priate remedy.[10] The discovery process is primarily designed to facilitate an orderly and efficient resolution of individual lawsuits, not to provide a national database. But our courts need not idly stand by if evidence of fraud or abuse is brought forward concerning documents subject to a protective order.

The parties could have addressed the future application and terms of the non-sharing protective order in the settlement agreement. *See Lavelock v. Cooper Tire & Rubber Co.,* 169 S.W.3d 865, 866–67 (Mo. banc 2005). Having failed to do so, the trial court abused its discretion in vacating the non-sharing protective order after the litigation ended absent a clear and convincing showing of good cause. The preliminary writ is made absolute.

LAURA DENVIR STITH, C.J., and LIMBAUGH, J., and ROBB and SULLIVAN, Sp.JJ., concur.

TEITELMAN, J., dissents in separate opinion filed; WOLFF, J., concurs in opinion of TEITELMAN, J.

RUSSELL and BRECKENRIDGE, JJ., not participating.

RICHARD B. TEITELMAN, Judge, dissenting.

This is a proceeding for an extraordinary writ. The majority opinion has not identified any legal authority compelling the conclusion that the circuit court acted in excess of its jurisdiction, that it abused its discretion, or that any party will suffer irreparable harm if the circuit court's ruling is left undisturbed. Therefore, I respectfully dissent.

The majority concludes that Ford relied on the continuing validity of the non-shar-ing order and that such reliance is the primary consideration in assessing the circuit court's modification of the order. While reliance on a protective order is a significant factor in examining the propriety of a decision to modify the order, the issue of reliance is not necessarily the dispositive consideration. In addition to reliance, courts also take into account efficiency concerns and the public interest in open access to records and documents. *See Wilk v. American Medical Ass'n,* 635 F.2d 1295 (7th Cir.1980). Protective orders may also be modified to streamline the litigation of similar issues in other cases. *See Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.,* 823 F.2d 159, 164 (6th Cir.1987). Therefore, a significant factor for many courts is whether the discovery sought will eliminate the need for duplicative discovery. *Wilk,* 635 F.2d at 1300.

In this case, the circuit court lifted the non-sharing order so as to permit other parties in virtually identical litigation to efficiently access the very same documents that Ford produced in this case. Though produced under a protective order, the fact remains that neither the suspension orders nor the engineering documents were found to be absolutely privileged from discovery. The only effect of lifting the non-sharing order is that the documents will be available in other cases while still being protected from disclosure to competitors. These efficiency concerns provide a reasonable basis for the circuit court's decision to lift the non-sharing order. *See, e.g., Grove Fresh Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 896 (7 Cir.1994) ("where a third party wishes to modify a protective order so as to avoid duplicative discovery in collateral litiga-

---

**10.** The documents apparently remain in the possession of the plaintiffs pursuant to the non-sharing protective order agreement.

tion, policy considerations favoring the efficient resolution of disputes justifies modification unless such an order would tangibly prejudice substantial rights of the party opposing modification").

The majority also concludes that Ford's reliance on the non-sharing protective order was obvious because Ford consistently objected to plaintiffs' discovery requests and motions. Ford's decision to vigorously litigate discovery issues does not necessarily imply that Ford is entitled to perpetual reliance on the circuit court's initial resolution of the discovery dispute. When assessed with an eye toward the efficiency concerns expressed in cases such as *Meyer Goldberg* and *Wilk*, Ford's consistent objections militate in favor of lifting the non-sharing order so as to streamline the litigation of other similar claims against Ford.

Prohibition is an extraordinary writ and should issue only if the facts and circumstances of a particular case demonstrate unequivocally that there exists an extreme necessity for preventative action. *Derfelt v. Yocom*, 692 S.W.2d 300, 301 (Mo. banc 1985). The discovery issues in the case are, at the very least, fairly debatable. Neither the case law nor the facts of this case compel the conclusion that the court abused its discretion and that there is an extreme necessity for preventative action. Therefore, I would quash the preliminary writ.