[Nos. 65111-1-I; 65112-9-I.    Division One.    April 25, 2011.]

A.G. ET AL., *Respondents*, v. CORPORATION OF THE CATHOLIC ARCHBISHOP OF SEATTLE, *Appellant*.

J.B. ET AL., *Respondents*, v. CORPORATION OF THE CATHOLIC ARCHBISHOP OF SEATTLE, *Appellant*.

*Michael A. Patterson* and *Karen A. Kalzer* (of *Patterson Buchanan Fobes Leitch & Kalzer PS*), for appellant.

*Michael T. Pfau, Jason P. Amala,* and *Darrell L. Cochran* (of *Pfau Cochran Vertetis Amala PLLC*), for respondents.

¶1 APPELWICK, J. — After settling these cases, the Archdiocese filed a motion to enforce the return or destruction of certain discovery documents, in accordance with a stipulated protective order the parties had signed. The trial court denied the Archdiocese's motion and instead modified the protective order to allow opposing counsel, Pfau Cochran, to retain the documents because they were the subject of ongoing discovery disputes in other cases. The question of whether the documents could be used in those cases was expressly left to the discretion of the judges in those other cases. We find no abuse of discretion. We affirm.

## FACTS

¶2 The law firm of Pfau Cochran Vertetis Kosnoff PLLC represented plaintiffs A.G., D.F., J.J. and J.B., M.B., and D.L. in two sexual abuse cases against the Corporation of the Catholic Archbishop of Seattle (Archdiocese).[1] By January 29, 2010, the plaintiffs in both cases had settled their claims.

---

[1] The complaints were initially filed by Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim LLP, but Pfau Cochran apparently took over as plaintiffs' counsel in both cases.

¶3 Both cases involved lengthy discovery litigation. Plaintiffs spent six months pursuing documents about the Archdiocese's knowledge and handling of its employees that were accused of sexual abuse. The Archdiocese resisted producing these documents on the grounds of privilege and privacy. But, in an August 25, 2009 order, the trial court ruled that the Archdiocese had failed to meet its burden in proving either of those defenses. The trial court ordered the Archdiocese to produce responsive information and documents, subject to a protective order. In the months that followed, the Archdiocese continued to resist discovery efforts. The trial court granted additional motions to compel production and to compel testimony in September and early November. Finally, on November 24, 2009, the court and attorneys for both parties signed the stipulation and protective order (protective order). The Archdiocese produced the documents as required by the court order.

¶4 The protective order broadly governed the use and handling of all documents and records that were produced during discovery in accordance with the court's orders. It specifically protected the documents, material, and information produced and designated them as "confidential," and further provided that the party receiving such information not use, copy, or disseminate it for any purpose other than this litigation. The protective order provided, in relevant part, that within 30 days after disposition or settlement of the case, the copies of the confidential and protected information should, "at the option of the producing party or person, be destroyed." The protective order also contained a provision stating:

> Nothing in this Stipulation shall prevent a party from requesting further relief from the Court regarding the information covered by this Stipulation and nothing in this Stipulation shall prevent the Court from modifying the Stipulation or resulting Order as the Court deems necessary to comply with the law.

¶5 After these two cases had settled, in January 2010, the Archdiocese contacted Pfau Cochran seeking the return

of the confidential documents it had produced. At that time, however, Pfau Cochran was involved in several other pending cases against the Archdiocese that involved similar claims, discovery requests for the same documents, and similar resistance from the Archdiocese. Pfau Cochran, citing the ongoing litigation and the interests of efficiency, resisted the return or destruction of those documents. On February 24, 2010, the Archdiocese brought a motion to enforce the protective order, requesting that the trial court uphold the protective order's terms and compel Pfau Cochran to return or destroy the documents. Pfau Cochran submitted a response opposing the motion to enforce, arguing first that the Archdiocese's requested relief would result in inefficiency and a waste of resources for the parties and the judicial system, and second, that "the Archdiocese specifically agreed that the Court could modify the protective order as justice requires." Accordingly, Pfau Cochran requested that the court modify the protective order and allow it to keep the documents for use in the ongoing cases, subject to the original protective terms. On March 10, 2010, the trial court denied the Archdiocese's motion to enforce the protective order "for the reasons stated in plaintiff's response," essentially granting a modification of the order. The court ruled:

> [T]he terms of the protective order at issue shall remain in place and shall govern the use of these materials in the [other] pending litigations [involving the Archdiocese and Pfau Cochran]. Should the parties in the above cases seek to modify the terms of the protective orders, they may do so before the judge assigned to the particular case.

¶6 The Archdiocese timely appealed.

## DISCUSSION

¶7 An appellate court reviews a trial court's discovery order for abuse of discretion. *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 778, 819 P.2d 370 (1991). Abuse of discretion will be found only on a clear showing

that the trial court's exercise of discretion was manifestly unreasonable, or exercised on untenable grounds, or made for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). A trial court's discretionary decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard. *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423-24, 138 P.3d 1053 (2006).

¶8 CR 26(c) confers the trial court with broad discretion in discovery to determine when a protective order is appropriate. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984). Our Supreme Court, in interpreting this rule, has further established that protective orders may be subject to later modification. *Marine Power & Equip. Co. v. Dep't of Transp.*, 107 Wn.2d 872, 876, 734 P.2d 480 (1987). While there has been little agreement in courts across the country about exactly what showing is necessary to support modification of a protective order, the Washington State Supreme Court expressly adopted a framework for the analysis of modification in *Marine Power*.[2] Under that framework, a court should consider and balance several factors in deciding whether to allow modification:

> (1) the nature and purpose of the original protective order; (2) the degree of reliance upon the order by the protected party; (3) the purpose and status of the party requesting modification; and (4) the government's role in the dispute.

*Id.*

¶9 *Marine Power* dealt with the modification of a protective order to allow third-party access to protected discovery, but it did not specifically address modification sought for the benefit of a party to the original order. Accordingly, the Archdiocese suggests that the *Marine Power* analysis should not apply here and that the court must undertake a

---

[2] The framework was modeled after the one in *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 552 (S.D.N.Y. 1985).

different analysis. It characterizes Pfau Cochran as a signatory/party to the protective order, rather than a third party. The Archdiocese argues, in essence, that the protective order should be treated more like a contract, which Pfau Cochran should not be able to breach or modify after having signed. Pfau Cochran was aware of its ongoing litigation in other cases when it signed the original protective order. The Archdiocese asserts that if Pfau Cochran objected to certain terms or wanted to be able to keep documents for use in other similar cases, it should have indicated as much or declined to sign the protective order in the first place.

¶10 The Archdiocese contends that it relied on the protective order. It refused to produce the documents at issue until Pfau Cochran signed the protective order and agreed to return or destroy its copies at the conclusion of the case. But, the Archdiocese did not, like a party to a contract negotiation, merely condition its disclosure of the confidential documents on the existence of a protective order. Instead, the trial court *ordered* the Archdiocese to produce the documents, holding that they were neither privileged nor protected by a privacy right. The Archdiocese was required under this court order to produce the documents at that point in time. The parties signed the protective order on November 24, 2009, months after the court had already declared the documents discoverable and ordered their disclosure, on August 25, 2009. We decline to treat the stipulation and protective order merely as a private contract. Both parties signed the document, but they did so in accordance with the trial court's prior express order that the Archdiocese produce responsive information and documents, "subject to a protective order." The Archdiocese was entitled to rely on the protective order, but that reliance was limited by the fact that the protective order was court ordered, not an independent contract, and was expressly subject to modification.

¶11 In challenging the modification, the Archdiocese relies primarily on the reasoning in a decision by the

Supreme Court of Missouri, where the court addressed a similar request for modification of a protective order by a signatory. *State ex rel. Ford Motor Co. v. Manners*, 239 S.W.3d 583 (Mo. 2007). In *Manners*, the court reached the conclusion that the Archdiocese now seeks on appeal, holding that the trial court abused its discretion by modifying or vacating the protective order after the close of litigation. *Id.* at 589. The Archdiocese points out that the request for modification in that case comes from a signing party rather than a third party. It suggests that this case similarly involves a request from an original signatory, rather than a third party. But, while Pfau Cochran signed the protective orders as a representative of the clients in this case, it sought modification as a representative of entirely different clients—and those clients are undoubtedly third parties to the original protective orders. Moreover, regardless of Pfau Cochran's status, the *Manners* court actually reaches its conclusion by engaging in substantially the same analysis set out in *Marine Power*. *Id.* at 587.

¶12 In support of its conclusion that modification was improper, the *Manners* opinion focuses considerable attention on how the defendant, Ford Motor Co., *relied* on the protective order, refusing to produce many of the discoverable documents until the protective order was entered. *Id.* at 588. This evaluation is essentially a combination of the first and second factors of the *Marine Power* analysis—the *Manners* court was (1) considering the purpose of the original protective order and (2) explicitly weighing the protected party's (Ford's) degree of reliance upon the order. *Id.*

¶13 Another central factor weighed by the *Manners* court was that of avoiding duplicative discovery and facilitating an efficient and practical discovery process in subsequent litigation. *Id.* at 589. This is exactly the same consideration addressed in *Marine Power* under the third factor: "(3) the purpose and status of the party requesting modification." 107 Wn.2d at 876. Our Supreme Court stated:

[A court] would favor modification for persons requesting protected evidence for use in other litigation and would be less likely to modify for requests not related to other pending litigation. . . . [M]odification should be based on a need to avoid costly and repetitive discovery rather than a request without any reasonable purpose.

*Id.* at 878-79.[3]

¶14 Contrary to the Archdiocese's suggestion, the same factors that govern a decision to modify a protective order should be applied here. The above reasoning from *Marine Power* applies with equal force to the present case. And, that reasoning supports the trial court's ultimate decision to grant a modification. Pfau Cochran had a very narrow and specific purpose for seeking the modification—it needed the exact same evidence for other pending litigation. Moreover, the record reflected how costly and time consuming it was for Pfau Cochran to obtain the evidence in question. These are exactly the concerns addressed in *Marine Power*, and they support the trial court's decision to modify. *Id.* at 881. *Manners* is the minority rule, and we decline to adopt it. The *Marine Power* analysis is controlling here.

¶15 Here, the consideration of judicial efficiency is central and decisive.[4] Pfau Cochran argued that "[requiring the destruction of the documents] would result in inefficiency and a waste of resources for the parties and the judicial system." Judicial efficiency is an appropriate concern for the trial court to balance in making its determination. *Id.* at 878-79; *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) ("Allowing the fruits of one litigation to facilitate preparation in other cases advances

---

[3] An analysis of the fourth factor in *Marine Power*, 107 Wn.2d at 876, "the government's role in the dispute," is inapplicable in both the present case and the *Manners* case.

[4] When the trial court granted the modification, it did so "for the reasons stated in plaintiff's response." In that response, Pfau Cochran provided two arguments. The first was about judicial efficiency. The second was that the language of the order provided for its own modification, as "necessary to comply with the law."

the interests of judicial economy by avoiding the wasteful duplication of discovery."). The dissenting opinion in *Manners* focused on these same concerns of efficiency, explaining why the trial court's modification should have been upheld:

> In this case, the circuit court lifted the [protective] order so as to permit other parties in virtually identical litigation to efficiently access the very same documents that Ford produced in this case. Though produced under a protective order, the fact remains that [the relevant documents were not] found to be absolutely privileged from discovery. The only effect of lifting the [protective] order is that the documents will be available in other cases while still being protected from disclosure . . . . These efficiency concerns provide a reasonable basis for the circuit court's decision to lift the [protective] order.

239 S.W.3d at 589 (Teitelman, J., dissenting). The same thing can be said of the Archdiocese's documents: they are likely to be necessary in the similar pending litigation; they were not found to be absolutely privileged; and a modification of the protective order would readily facilitate judicial efficiency, while still limiting the documents' use to the requirements of the pending litigation.[5] An appellate court does not substitute its own judgment for that of the trial court but, rather, looks to whether the court's exercise of discretion was manifestly unreasonable, or made for untenable reasons. *Carroll*, 79 Wn.2d at 26. Given the facts about the discovery difficulty in the two sets of cases, this argument provides a compelling basis for modification under the reasoning in *Marine Power*. Courts have substantial latitude in overseeing the discovery process, including the power to compel disclosure or to fashion protective orders. *Rhinehart*, 467 U.S. at 36. The trial court did not adopt a view that " 'no reasonable person would take.' " *Boy Scouts of Am.*, 157 Wn.2d at 424 (internal quotation marks omitted) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d

---

[5] And as the *Manners* dissent suggests, the applicable standard of review—abuse of discretion—is particularly important and decisive in this analysis. 239 S.W.3d at 590.

638 (2003)). Accordingly, we hold that the trial court did not abuse its discretion by modifying the protective order.

¶16 The Archdiocese further argues that the trial court abused its discretion by overstepping its jurisdictional authority in issuing a discovery order that impacted other cases before other trial courts. The Archdiocese relies on *Foltz*, which concerns the interpretation of the federal rule, Fed. R. Civ. P. 26. When the language of a Washington rule and its federal counterpart are virtually identical (such as CR 26 and Fed. R. Civ. P. 26), courts may look to decisions interpreting the federal rule for guidance. *Am. Disc. Corp. v. Saratoga W., Inc.*, 81 Wn.2d 34, 37, 499 P.2d 869 (1972).

¶17 The Archdiocese alleges that the modification of the protective order amounts to the trial court's issuing a discovery order that is binding on other trial courts. It further alleges that *Foltz* rejected this practice by holding that the court that issued the protective order cannot ultimately rule on the discoverability of the protected materials in other cases. *Foltz*, 331 F.3d at 1133. But, the Archdiocese misconstrues the Ninth Circuit's opinion. In its holding, the *Foltz* court reasoned:

> If any properly protected . . . discovery is relevant to the collateral suits, the district court should have modified the protective order in the interest of avoiding duplicative discovery; the courts overseeing the collateral litigation can settle any disputes as to whether particular documents are discoverable in the collateral litigation.

*Id.* at 1134. This was exactly how the trial court proceeded in the present case—it modified the protective order to avoid duplicative discovery. The trial court's ruling provides: "Should the parties in [Pfau Cochran's other pending cases] seek to modify the terms of the protective orders, they may do so before the judge assigned to the particular case." The trial court was careful to leave the specific questions about the use of the records to the other courts, where those courts could consider discovery processes "without running up against the protective order of another

court." *Id.* at 1133. As stated in *Marine Power*: modification is favored "for persons requesting protected evidence for use in other litigation." 107 Wn.2d at 878-79. The trial court did not abuse its discretion by denying the Archdiocese's motion to enforce the protective order.

¶18 We affirm.

LEACH, A.C.J., and SCHINDLER, J., concur.

Review granted at 172 Wn.2d 1017 (2011).